# In re Mario Eduardo VELARDE-Pacheco, Respondent

File A70 178 696 - San Diego

*Decided March 6, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A properly filed motion to reopen for adjustment of status based on a marriage entered into after the commencement of proceedings may be granted in the exercise of discretion, notwithstanding the pendency of a visa petition filed on the alien's behalf, where: (1) the motion to reopen is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), or on any other procedural grounds;(4) clear and convincing evidence is presented indicating a strong likelihood that the marriage is bona fide; and (5) the Immigration and Naturalization Service does not oppose the motion or bases its opposition solely on *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992). *Matter of H-A-*, Interim Decision 3394 (BIA 1999), and *Matter of Arthur*, *supra*, modified.

FOR RESPONDENT: Manuel Armando Rios, Esquire, San Diego, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Alan S. Rabinowitz, Deputy District Counsel

BEFORE: Board En Banc: SCHMIDT, VILLAGELIU, GUENDELSBERGER, MOSCATO, MILLER, BRENNAN, and OSUNA, Board Members. Concurring Opinions: HOLMES, Board Member, joined by HURWITZ, Board Member; ROSENBERG, Board Member; ESPENOZA, Board Member. Dissenting Opinions: GRANT, Board Member; PAULEY, Board Member, joined by SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; FILPPU, COLE, OHLSON, and HESS, Board Members.

VILLAGELIU, Board Member:

This case was last before us on June 12, 2001, when we dismissed the respondent's appeal from an Immigration Judge's decision finding him removable as an alien who was inadmissible at the time of entry and ineligible for any form of relief. The respondent now seeks to reopen the proceedings, arguing that he is prima facie eligible for adjustment of status based on his bona fide marriage to a United States citizen. The motion will be granted and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a 25-year-old native and citizen of Mexico.  At a hearing on October 27, 1997, the Immigration Judge ordered the respondent deported to Mexico.  The respondent filed a timely appeal from that decision.

On February 23, 1999, the respondent married a United States citizen.  The couple's son was born on July 24, 1999.  On April 30, 2001, the respondent's wife filed a Petition for Alien Relative (Form I-130) with the Service on the respondent's behalf, and he simultaneously filed an Application to Register Permanent Residence or Adjust Status (Form I-485), pursuant to 8 C.F.R. § 245.2(a)(2)(i) (2001), seeking the benefits of section 245(i) of the Act, 8 U.S.C. § 1255(i) (2000).

We dismissed the respondent's appeal on June 12, 2001.  On September 10, 2001, the respondent filed the present motion to reopen with supporting documentation that includes a copy of his marriage certificate, a copy of his son's birth certificate, and copies of his filing fee receipts.  He has also submitted copies of his adjustment application and supporting documentation, as required by 8 C.F.R. § 3.2(c)(1) (2001).  These materials include the birth certificate of the couple's United States citizen son as evidence of the bona fide nature of their marriage.  *See* 8 C.F.R. §§ 204.2(a)(1)(iii)(B)(4), 245.1(c)(9)(v)(D) (2001).

The respondent  argues that he should be given an opportunity  to adjust his status to that of a lawful permanent resident as a result of his marriage to a United States citizen, and he urges us to reopen proceedings and remand his case to the Immigration Judge to allow him to apply for such relief.

In its response to the respondent's motion, the Immigration and Naturalization Service argues that we are precluded from reopening this case by our decisions in *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), and *Matter of H-A-*, Interim Decision 3394 (BIA 1999).

## II.  ISSUE

The issue before us is whether we should modify our policy, stated in *Matter of Arthur*, *supra*, and reaffirmed in *Matter of H-A-*, *supra*, to deny a motion to reopen to apply for adjustment of status that is based on an unadjudicated visa petition filed by a United States citizen or lawful permanent resident on behalf of his or her spouse, in light of the Service's recently revised procedures regarding the joining of untimely motions to reopen that are submitted after visa petition approval.

## III.  ANALYSIS

In *Matter of Arthur*, *supra*, the respondent filed a motion to reopen with the Immigration Judge, claiming eligibility for adjustment of status based on his

marriage to a United States citizen after the commencement of deportation proceedings. The respondent filed a Form I-485, and a Form I-130 was submitted on his behalf. The Immigration Judge denied the respondent's motion because the I-130 had not yet been adjudicated by the Service. We affirmed, modifying our holding in *Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978), which treated pending visa petitions that are prima facie approvable as already approved for purposes of reopening based on the simultaneous filing provisions of 8 C.F.R. § 245.2(a)(2)(i). *Matter of Arthur*, *supra*, at 477.

In *Matter of H-A-*, *supra*, we addressed a situation in which we initially denied the respondent's motion to reopen to apply for adjustment of status under section 245(i) of the Act, in accordance with the policy articulated in *Matter of Arthur*, because a Form I-130 filed on the respondent's behalf had not yet been approved by the Service. After the visa petition was eventually approved, we denied a subsequently filed motion to reconsider based on the time and number limits set forth in 8 C.F.R. § 3.2(c)(2). *Matter of H-A-*, *supra*.

The effect of our policy in *Matter of Arthur*, *supra*, coupled with the regulation limiting respondents to one motion to reopen filed within 90 days of a final administrative decision and the Service's inability to adjudicate many I-130 visa petitions within that time frame, has been to deprive a small class of respondents, who are otherwise prima facie eligible for adjustment, of the opportunity to have their adjustment applications reviewed by an Immigration Judge. *See* sections 204(g), 245(e) of the Act, 8 U.S.C. §§ 1154(g), 1255(e) (2000); Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 5, 100 Stat. 3537, 3543; Immigration Act of 1990, Pub. L. No. 101-649, § 702, 104 Stat. 4978, 5086; 8 C.F.R. §§ 3.2(c)(2), 3.23(b)(3) (2001); *see also INS v. Doherty*, 502 U.S. 314 (1992); *INS v. Abudu*, 485 U.S. 94 (1988); *Matter of Gutierrez*, 21 I&N Dec. 479 (BIA 1996); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992); H.R. Conf. Rep. No. 101-955, at 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793.

The Service recently revised its policy on joining untimely motions to reopen for adjustment of status. In a memorandum dated July 16, 2001, the Service's General Counsel stated that, given changes to the Act, including the "stop-time rule" of section 240A(d) of the Act, 8 U.S.C. § 1229b(d) (2000), and repeated amendments to section 245(i) of the Act, an amendment to the Service's guidance as it relates to adjustment of status and motions to reopen was warranted. *See Memorandum for Regional Counsel for Distribution to District and Sector Counsel*, Office of the General Counsel (July 16, 2001). The Service withdrew its "extraordinary and compelling circumstances" standard for joining such a motion, stating that assistant district counsels may now join in a motion to reopen for consideration of adjustment of status if that

relief was not available to the alien at the former hearing, the alien is statutorily eligible for adjustment, and the alien merits a favorable exercise of discretion. *Id.*

We conclude that a properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), or on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on *Matter of Arthur*, *supra*.

In the instant case, the respondent filed his first and only motion to reopen before this Board within 90 days of our decision dismissing his appeal. The respondent was not granted voluntary departure during proceedings before the Immigration Judge, and he is therefore not barred from adjustment of status for overstaying a voluntary departure period. *See Matter of Shaar*, *supra*. We find no other procedural bars to his motion to reopen.

Most importantly, the respondent has submitted clear and convincing evidence that his marriage is bona fide, based on the evidentiary standard set forth at 8 C.F.R. § 204.2(a)(1)(iii)(B). The respondent has submitted copies of his receipt for the I-485 filing fee; his receipt for the I-130 filing fee that was submitted on his behalf by his wife; his receipt for the additional sum prescribed by 8 C.F.R. § 245.10(b) (2001); his marriage certificate; and the birth certificate of his United States citizen son. He has also submitted an affidavit attesting that he has known his wife since 1995.

The Form I-485 filed by the respondent indicates that he and his wife have lived together at their current address since June 1999. Submission of such evidence, in compliance with the standards prescribed by 8 C.F.R. § 204.2(a)(1)(iii)(B) for establishing the bona fide nature of a marriage by clear and convincing evidence, indicates a high probability that the respondent's marriage is bona fide. *See Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983); *Matter of Phillis*, 15 I&N Dec. 385 (BIA 1975). The respondent has therefore met the above requirements for reopening of these proceedings.

We emphasize that we do not endorse granting adjustment of status in every case in which a respondent makes a prima facie showing of eligibility, nor do we address motions to reopen filed after the 90-day deadline has passed. Every application necessarily requires examination of the relevant factors and a determination of the weight such factors should be accorded in the exercise of discretion, with respect both to reopening and to the ultimate determination on the application for relief. Similarly, motions submitted after the 90-day period prescribed by regulation present additional considerations

regarding the finality of proceedings, which can best be addressed through the Service's recently announced policy on joining such a motion. The Service is in a better position to ascertain whether additional factors, which may not be readily apparent, militate against reopening.

In addition, our decision today does not require Immigration Judges to reopen proceedings pending adjudication of an I-130 visa petition in every case in which the respondent meets all five of the aforementioned factors. Immigration Judges may still deny motions to reopen if they determine that a respondent's visa petition is frivolous or that adjustment would be denied in any event, either on statutory grounds or in the exercise of discretion. A prima facie showing of eligibility merely affords respondents who present sufficient evidence a single opportunity to have their adjustment applications adjudicated. Such an opportunity is consistent with Congress' legislative intent in amending the marriage fraud provisions: that aliens who marry after proceedings have been initiated, and who seek adjustment of status, should be afforded one opportunity to present clear and convincing evidence that their marriage is bona fide. *Compare* H.R. Rep. No. 101-723 (I), at 50-52 (1990), *reprinted in* 1990 U.S.S.C.A.N. 6710, 6730-32, *with* H.R. Conf. Rep. No. 101-955, at 128.

At the same time, the Service is also provided an opportunity to fully investigate a respondent's claim and present the results of that investigation to the Immigration Judge, as suggested in the Service's Operations Instruction 245.2(f) (2001). *See generally Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980) (finding the policy manifest in an Immigration and Naturalization Service Operations Instruction appropriate for consideration by the Immigration Judge and the Board in the exercise of discretion).

## IV. CONCLUSION

Accordingly, we modify our decisions in *Matter of H-A-*, *supra*, and *Matter of Arthur*, *supra*, to allow for the granting of a motion to reopen to apply for adjustment of status, pending approval of the I-130 visa petition by the Service, in cases where an alien has satisfied the five factors listed above. The respondent has met the requirements for reopening of the proceedings in this case. The respondent's motion to reopen will therefore be granted, and the record will be remanded to the Immigration Judge for further proceedings.

**ORDER:** The motion to reopen is granted.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION:*  David B. Holmes, Board Member, in which Gerald S. Hurwitz, Board Member, joined

I respectfully concur.   In my view, the issue before us is whether those respondents who can satisfy all of the other rigorous eligibility requirements for reopening proceedings to pursue an application for adjustment of status based on a marriage entered into while in proceedings should nonetheless be subject to an additional, *absolute* bar to reopening that arises neither from statute nor regulation, but instead is *solely* of the Board's own creation.  *See Matter of H-A-*, Interim Decision 3394 (BIA 1999); *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992).  I find that such a bar is not appropriate given the development of the law in this area.

In this regard, I am guided by the fact that in 1986 Congress included in the Immigration and Nationality Act an absolute bar to adjustment for respondents who entered into marriages during the course of deportation or exclusion proceedings.  *See* Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 5(b), 100 Stat. 3537, 3543 (codified as amended at section 245(e) of the Act, 8 U.S.C. § 1255(e) (Supp. IV 1986)).   This preclusion to adjustment was easy for the Service, the Immigration Judges, and the Board to administer because it was absolute.  Moreover, it was exceedingly effective at screening out suspect marriages because *all* marriages entered into during the course of proceedings were included in its sweep.  However, this same broad sweep also excluded from adjustment many respondents, including those with United States citizen children, whose marital relationships were bona fide, with obvious resulting hardship to citizens and lawful permanent residents of this country.   In response, Congress amended the Act in 1990 by exempting from the bar an alien who could establish "by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and . . . was not entered into for the purpose of procuring the alien's entry as an immigrant."  Immigration Act of 1990, Pub. L. No. 101-649, § 702, 104 Stat. 4978, 5086 (codified as amended at section 245(e)(3) of the Act, 8 U.S.C. § 1255(e)(3) (Supp. II 1990)).

This development of the law reflects Congress' intent to rigorously screen out fraudulent or suspect marriages from eligibility for adjustment of status, but to not do so in a manner that *unnecessarily* includes within its scope genuine marital relationships.  Given Congress' decision in 1990 to replace an absolute bar with one that instead imposes a higher standard of proof, it does not seem appropriate to me for the Board to create an absolute bar to reopening in circumstances in which the statutory goals can similarly be met by the imposition of a more rigorous standard of proof.  Accordingly, I would modify the Board's decisions in *Matter of H-A-*, *supra*, and *Matter of Arthur*, *supra*, and apply the standards enunciated by the Board in *Matter of Garcia*,

16 I&N Dec. 653 (BIA 1978), to cases such as the respondent's, with the additional requirement that the underlying visa petition be prima facie approvable under the more rigorous "clear and convincing evidence" standard set forth in section 245(e)(3) of the Act, rather than under the "preponderance of the evidence" standard that governs other motions within the scope of *Matter of Garcia*.

In the present case, but for the Board's decisions in *Matter of H-A-*, *supra*, and *Matter of Arthur*, *supra*, the respondent appears eligible under *Matter of Garcia*, *supra*, to have his proceedings reopened to provide him the opportunity to pursue an application for adjustment of status. I find a prima facie showing that the visa petition filed on his behalf is approvable under the "clear and convincing evidence" standard. *See* 8 C.F.R. § 204.2(a)(1)(iii)(B) (2001). Accordingly, I agree with the majority that the motion should be granted to permit the respondent an opportunity both to establish his eligibility for adjustment of status and, if eligible, to demonstrate that he warrants such relief in the exercise of discretion.

*CONCURRING OPINION*: Lory Diana Rosenberg, Board Member

I respectfully concur in the majority's decision to grant the respondent's motion to reopen, as I am in complete agreement that reconsideration of our opinions in *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), and *Matter of H-A-*, Interim Decision 3394 (BIA 1999), is warranted. Upon reconsideration of those decisions, I also agree with the majority that it is within our discretion to grant a timely motion to reopen seeking a remand to apply for adjustment of status based on a showing of "clear and convincing evidence . . . indicating a strong likelihood that the respondent's marriage is bona fide." *Matter of Velarde*, 23 I&N Dec. 253, 256 (BIA 2002).

However, I would not find it necessary to restrict our discretion by imposing the additional condition that "the Service does not oppose the motion or bases its opposition to the motion to reopen solely on our decision in *Matter of Arthur, supra*." *Matter of Velarde*, *supra*, at 256. Such a restriction is not warranted by sections 204(g) and 245(e) of the Immigration and Nationality Act, 8 U.S.C. §§ 1154(g) and 1255(e) (2000), which prompted our prior decision in *Matter of Arthur*, *supra*.

First, the respondent's motion to reopen is timely, as it was filed within 90 days of our ruling on the respondent's timely appeal from the October 27, 1997, decision of the Immigration Judge. *See* 8 C.F.R. § 3.2(c) (2001). It is a reasonable assumption that the considerations underlying the Immigration and Naturalization Service's current policy of joining meritorious, *untimely* motions to enable a respondent to apply for adjustment of status also would extend to meritorious, *timely* motions. *See Memorandum for Regional Counsel for Distribution to District and Sector Counsel*, Office of the

General Counsel (July 16, 2001) (authorizing the Service to join a motion to reopen seeking adjustment of status if adjustment was not previously available, and the respondent is eligible and merits a favorable exercise of discretion). Indeed, all things being equal, it is difficult to imagine a rational reason why the Service would acquiesce in an untimely motion to facilitate the consideration of an adjustment of status application, but object to a timely filed one.

Second, at the time we dismissed the respondent's appeal on June 12, 2001, the respondent had been married to a United States citizen for over 2 years, and the couple had a son who was 2 years old. In addition, the respondent had filed an application for adjustment of status with the Immigration Judge under section 245(i) of the Act. *See* 8 C.F.R. § 245.2(a)(1) (2001) (requiring that once an alien is in proceedings, the adjustment application shall be made and be considered only in such proceedings). His application had been properly filed originally in conjunction with his wife's immediate relative petition seeking an exemption of the prohibition on approval of such petitions. *See* 8 C.F.R. § 245.2(a)(2)(i) (instructing that adjustment applications filed simultaneously with immediate relative visa petitions are to be retained when approval of the visa petition would make a visa immediately available at the time of filing the adjustment application).

Although section 204(g) of the Act restricts the approval of a marriage-based visa petition when the marriage is entered into during the period that administrative or judicial proceedings are pending, section 245(e)(3) provides an explicit exception to that restriction. Specifically, when a respondent establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the jurisdiction in which it took place, and that it was not entered into for the purpose of procuring the alien's admission as an immigrant, the restrictions in section 204(g) of the Act and the prohibition on adjustment of status under section 245(e)(1) of the Act do not apply. Section 245(e)(3) of the Act; *see also* 8 C.F.R. § 204.2(a)(1)(iii)(B) (2001) (listing evidence to be relied upon to meet the bona fide marriage exemption to the marriage fraud provisions in sections 204(g) and 245(e) of the Act).

Accordingly, when a respondent supports a motion to reopen with documentation that contains clear and convincing evidence indicating the strong likelihood that his marriage is bona fide, he has made a prima facie showing of eligibility consistent with the exception provided in section 245(e)(3) of the Act. Although 8 C.F.R. § 204.1(e)(1) (2001) provides that jurisdiction lies with the Service office having jurisdiction over the petitioner's residence, and 8 C.F.R. § 204.2(a)(1)(iii)(C) allocates the ultimate authority to approve the visa petition to the Service director, the Service's authority is not exclusive. *See Matter of Obaigbena*, 19 I&N Dec.

533 (BIA 1988); *accord Matter of Soriano*, 19 I&N Dec. 764 (BIA 1988). *But see Dodig v. INS*, 9 F.3d 1418 (9th Cir. 1993) (holding that the district director is charged exclusively with ultimately approving a visa petition).

The exception to adjustment preclusion in section 245(e)(3) of the Act, and the regulatory provisions that permit simultaneous filings and mandate that an adjustment application be filed with the Immigration Judge after an alien is in proceedings, indicate that the Immigration Judge and the Board share some of the authority delegated to the Attorney General under section 245(e)(3) of the Act. *See* 8 C.F.R. §§ 245.2(a)(1), (2)(i). As the Service explained in interim rules issued on July 23, 1997, there is no requirement that an adjustment applicant be the beneficiary of an approved, valid, and unexpired visa petition in order to file an application for adjustment of status. Adjustment of Status to That of Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 62 Fed. Reg. 39,417, 39,419 (1997). Obviously, if the visa petition is filed simultaneously with the adjustment application in accordance with 8 C.F.R. § 245.2(a)(2)(i), the visa petition could not be already approved.

The submission of a pending visa petition accompanied by sufficient documentary evidence under 8 C.F.R. § 204.2(a)(1)(iii)(B) with a motion to reopen should suffice to establish prima facie evidence of a bona fide marriage for purposes of reopening. Looking to such a prima facie showing to determine whether to grant reopening under 8 C.F.R. § 3.2(c) is consistent with the statutory language in section 245(e)(3) of the Act, reflecting Congress' express intent that an affected alien have an opportunity to provide clear and convincing evidence of a bona fide marriage. *Id.*

In *Matter of Arthur*, *supra*, we insisted on prior Service approval of a marriage-based visa petition before we would grant reopening for adjustment of status in cases subject to the marriage fraud provisions. *Id*. at 479 (holding that we would "hereafter decline to grant motions to reopen" until the Service approved the visa petition filed on the alien's behalf). We found that, for purposes of reopening, a presumption that a marriage claimed on an unadjudicated visa petition was bona fide in the absence of clear ineligibility conflicted with the terms of the marriage fraud amendments. *Id.* (modifying *Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978)).

With due respect, our reasoning in *Matter of Arthur* confuses the district director's ultimate authority to approve a visa petition with the authority of the Immigration Judge or the Board to determine that a hearing to consider the merits of an adjustment application is warranted based on preliminary assessment that a respondent has made a prima facie showing that his marriage is bona fide. *Matter of Arthur*, *supra*, at 479. In *Arthur*, we reasoned that given the respondent's burden of providing by clear and convincing evidence that his marriage is bona fide, a preliminary evaluation to determine prima facie eligibility was untenable and would amount to a

substantial and unwarranted intrusion into the district director's authority. *Id.* at 478-79 (finding that the "clear and convincing evidence" standard is, of course, more stringent than the "preponderance of the evidence" standard ordinarily required to establish a claimed relationship between a petitioner and a beneficiary).

In addition, our conclusion in *Arthur* that "[a]n inquiry into whether the evidence submitted in support of a visa petition is sufficient, in light of the heavy burden imposed on the petitioner, to demonstrate prima facie eligibility . . . *would necessarily involve an in-depth examination* into the merits of the petition" is erroneous. *Id.* at 479 (emphasis added). In my view, it distorts what is meant by "prima facie" eligibility.

*Black's Law Dictionary* defines "prima facie" as "[a]t first sight; on first appearance but subject to further evidence or information." *Black's Law Dictionary* (7th ed. 1999). "Prima facie case" is defined as "1. The establishment of a legally required rebuttable presumption" or "2. A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Id.* Therefore, a prima facie showing is made when the facts asserted, if later proven in a full hearing, would establish eligibility under the statutory standard. *Matter of Coelho*, 20 I&N Dec. 464, 473 (BIA 1992) (tying prima facie eligibility to statutory eligibility).

The prima facie eligibility standard does not vary according to the particular substantive burden of proof that is applicable. Rather, it is demonstrated when facts sufficient to sustain the respondent's burden after a hearing are presented in his motion to reopen. In this case, the regulations specify quite clearly the kinds of facts necessary to sustain the respondent's burden of producing clear and convincing evidence of a bona fide marriage and trigger the exception allowing adjustment of status under section 245(e)(3) of the Act. There is no dispute that the respondent not only asserted such facts, but provided proof of them in connection with his motion to reopen.

We have ruled that reopening is warranted under the prima facie eligibility standard. *See Matter of L-O-G-*, 21 I&N Dec. 413 (BIA 1996). There is no question that we may determine prima facie eligibility under a clear and convincing evidence standard without ruling on the petition itself. *Id.* at 418-19 (recognizing that "the Board historically has not required a conclusive showing that, assuming the facts alleged to be true, eligibility for relief has been established"). By finding prima facie eligibility, we are deciding only that there is a reasonable likelihood that the statutory requirements for the relief sought will be satisfied. *See M.A. v. United States INS*, 899 F.2d 304 (4th Cir. 1990); *Marcello v. INS,* 694 F.2d 1033 (5th Cir.), *cert. denied*, 462 U.S. 1132 (1983).

Consequently, I must question the Board's unsupported conclusion in *Matter of Arthur*, *supra*, that a prima facie eligibility test cannot be used

merely because the standard the petitioner must satisfy in order for the respondent to be eligible to adjust his status to that of a lawful immigrant is greater than a preponderance of the evidence. *Id.* at 478-79. Moreover, instead of requiring prima facie evidence to support the motion to reopen, the Board in *Arthur* required conclusive evidence of eligibility: an approved visa petition. *See* 8 C.F.R. § 3.2(c). Such a conclusive showing for reopening is an inappropriate basis on which to deny a motion to reopen.

By contrast, the test proposed by the majority—clear and convincing evidence indicating the strong likelihood that the respondent's marriage is bona fide—is within the authority of the Board to apply. The applicability of such a test in adjudicating a motion to reopen comports with our use of a prima facie eligibility standard to decide motions to reopen generally. *See* 8 C.F.R. § 3.2(c); *Matter of L-O-G-, supra.*

Furthermore, 8 C.F.R. § 204.2(a)(1)(iii)(B), specifying the type of evidence that can meet the bona fide marriage exemption to the marriage fraud provisions in sections 204(g) and 245(e) of the Act, was promulgated in conformity with our interpretation of the standard in *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983). *See* Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant, 57 Fed. Reg. 41,053, 41,058 (1992). In *Matter of Laureano, supra*, at 3, issued after *Arthur*, we ruled that "[t]he conduct of the parties after the marriage is relevant to their intent at the time of marriage," and specified that "[e]vidence to establish intent may take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." Our participation in such an assessment at the appellate level is clearly contemplated, as 8 C.F.R. § 204.2(a)(1)(iii)(E) specifies that the Board decision constitutes the single level of appellate review of bona fide visa petition denials provided in section 245(e)(3) of the Act. *See* 8 C.F.R. § 3.1(b)(5) (2001).

A prima facie showing consistent with our decision in *Matter of Laureano* provides a better guideline than the *Arthur* rule for purposes of reopening under 8 C.F.R. § 3.2. As 8 C.F.R. § 245.2(a)(1) requires that after an alien is in deportation or removal proceedings the adjustment application shall be made and be considered only in such proceedings, the *Arthur* rule denying reopening unreasonably encumbers the respondent's statutory right to apply for residency in the United States through the adjustment of status process.[1]

---

[1] Although one might argue that a respondent may obtain his immigrant visa through the consular process, this alternative is not a realistic one, as deportation or removal renders an alien inadmissible to the United States. *See* section 212(a)(9) of the Act, 8 U.S.C. § 1182(a)(9) (2000); *see also* section 212(a)(9)(A)(iii) of the Act (providing an exception if the

(continued...)

*See* sections 201(b)(2)(A)(i), 212(a)(9),(o), 245(a), (i) of the Act, 8 U.S.C. §§ 1151(b)(2)(A)(i), 1182(a)(9), (o), 1255(a), (i).

Contrary to our prior rulings, there is no conflict between our concluding that a marriage appears bona fide for purposes of granting such a hearing and the district director's ultimate determination of the visa petition. *See Matter of Arthur*, *supra*, at 478-79. Furthermore, the determination whether to grant a motion to reopen is essentially a discretionary one. Although the regulations provide certain requirements, such as time and number limitations, those limits are not at issue here. *See* 8 C.F.R. § 3.2.

Thus, I see no justification for the degree of deference extended to the Service under the fifth condition articulated in the majority opinion. I do not believe that Service opposition is an appropriate "condition" that, as a rule, should result in denial of a motion to reopen. Our role is to engage in impartial and independent adjudications, not to rubberstamp the preferences of the Service. *See* 8 C.F.R. § 3.1(d) (2001) (providing that the Board shall exercise such authority as is necessary and appropriate for the disposition of the case). In the exercise of discretion in adjudicating such a motion in the absence of visa petition approval, we certainly may consider any substantive objections to reopening offered by the Service. In particular, objections challenging the bona fides of the marriage may be entitled to considerable weight. However, such objections should not constitute an insurmountable barrier to granting a motion to reopen.

If the Service has serious concerns about the merits of the visa petition, the best way to defeat a motion to reopen is to adjudicate the visa petition and deny it. Even if that cannot be accomplished during the time that the motion is pending, the Service still could present evidence that would undermine the respondent's prima facie case. And, even if the Service is unable to defeat a prima facie showing of eligibility before the motion to reopen is granted, the Service can adjudicate the petition and issue a denial that would ultimately defeat the application for adjustment of status before it is adjudicated on its merits in a hearing before the Immigration Judge.

I conclude that, in view of section 245(e)(3) of the Act, as implemented by 8 C.F.R. §§ 204.2(a)(1)(iii)(B), 245.2(a)(1), and 245.2(a)(2)(i), a respondent's motion to reopen seeking an opportunity to apply for adjustment of status in a case in which the marriage was entered after proceedings began should be granted when the motion is supported by prima facie evidence, i.e., clear and convincing evidence indicating the strong likelihood that the respondent's marriage is bona fide. Therefore, I concur in the majority opinion.

---

[1] (...continued)

Attorney General permits an application for readmission). *But see Matter of Tin*, 14 I&N Dec. 371 (R.C. 1973) (conditioning such discretionary permission in large part on the length of time spent outside the United States).

*CONCURRING OPINION*:  Cecelia M. Espenoza, Board Member

I respectfully concur in the result reached by the majority for the reasons stated herein.

A fundamental interest in our immigration laws is the preservation of the rights of United States citizens to process immigration visas for designated members of their families.[1]  The spouse of a United States citizen is a member of such a class.  It is our duty to ensure that the competing interests of immigration enforcement and rights of citizens be recognized.  The rule advanced today sets forth a reasonable, limited remedy.

I recognize that the right to petition for a spouse is not absolute, as it is balanced against the interests of the government to process and remove aliens who would *fraudulently* enter into marriages to evade immigration laws.  *See* Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 5(b), 100 Stat. 3537, 3543 ("IMFA"); *see also* H.R. Rep. No. 99-906 (1986) (on H.R. 3737), *reprinted in part in* 1986 U.S.C.C.A.N. 5978-86; S. Rep. No. 99-491 (1986) (on S. 2270).  However, the issue presented here is whether the respondent is an individual who meets the exception to the rule because he has a bona fide marriage.  *See* 8 C.F.R. §§ 204.2(a)(1)(iii)(B), 245.1(c)(9)(v) (2001) (setting forth the bona fide marriage exception and standards).  In determining that this individual is entitled to relief, I agree with the analysis of Board Member Rosenberg regarding the error of our prior holding in *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992).

Consistent with the position of the majority, I believe that the evidence advanced by the respondent warrants reopening.  The dissent essentially argues that the IMFA presumption justifies our prior holdings and can only be overcome if a visa petition is approved within 90 days of the issuance of our decision.  If this were the law, there would be no need to set forth alternative evidence to demonstrate the bona fides of a marriage.  *See* 8 C.F.R. §§ 204.2(a)(1)(iii)(B), 245.1(c)(9)(v).[2]

---

[1] In fiscal year 2000, 69% of all legal immigrants were family sponsored immigrants.  *See Annual Report: Legal Immigration, Fiscal Year 2000*, issued by the Office of Policy and Planning, Immigration and Naturalization Service, *available at* http://www.ins.gov/graphics/aboutins/statistics/Immigs.htm ("*Legal Immigration*").  Furthermore, in *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971), the United States Supreme Court recognized that "marriage involves interests of basic importance in our society."

[2] The regulation setting forth these alternatives was issued subsequent to our ruling in *Matter of Arthur*, *supra*, and was promulgated to specify the evidence that can meet the bona fide marriage exemption to the marriage fraud provisions in sections 204(g) and 245(e) of the Immigration and Nationality Act, 8 U.S.C. §§ 1154(g) and 1255(e) (2000).  *See* Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant, 57 Fed. Reg. 41,053, 41,058 (1992).

In my view, the fundamental question we are faced with is whether sufficient facts exist to warrant a finding of a bona fide marriage in this case. The burden of the respondent is to demonstrate by "clear and convincing evidence . . . a strong likelihood that the respondent's marriage is bona fide." *Matter of Velarde*, 23 I&N Dec. 253, 256 (BIA 2002). This finding is required to insure that the marriage was not entered into for the purpose of evading the immigration laws. The respondent's marriage prior to the birth of his child demonstrates an intent to legitimate the child, which undermines the notion that he entered into this marriage for immigration purposes. In fact, as a matter of law under the Immigration and Nationality Act, his marriage establishes that this is his child.[3] Furthermore, if the respondent's intent were to evade the immigration laws, it is far more likely that his wife would have filed a Petition for Alien Relative (Form I-130) with the Immigration and Naturalization Service prior to April 30, 2001, or subsequent to our decision on June 12, 2001. As the application was filed independent of either of these dates, I conclude that the evidence meets the clear and convincing evidence standard required by the regulations. 8 C.F.R. § 245.1(c)(9)(v).

The respondent's timely filing within 90 days of our final decision provides us with this opportunity to reevaluate *Matter of Arthur*, *supra*, and *Matter of H-A-*, Interim Decision 3394 (BIA 1999). Contrary to the speculation of the dissent, the facts demonstrate that neither this respondent nor individuals similarly situated to him have the visa petitions that are filed on their behalf adjudicated in a timely manner. In addition, there is no indication that resources or a procedure for that purpose exist.[4] Therefore, I concur in the majority opinion.

*DISSENTING OPINION:* Edward R. Grant, Board Member

I respectfully dissent without opinion.

*DISSENTING OPINION:* Roger A. Pauley, Board Member, in which Lori L. Scialabba, Acting Chairman; Mary Maguire Dunne, Vice Chairman; Lauri Steven Filppu, Patricia A. Cole, Kevin A. Ohlson, and Frederick D. Hess, Board Members, joined

The operative, though never expressly stated, reason for the majority's retreat from *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), and *Matter of H-A-*, Interim Decision 3394 (BIA 1999), is its belief that the Immigration and

---

[3] The Immigration and Nationality Act sets forth who is a "child," which, for purposes of the Act, is "a child born in wedlock." Section 101(b)(1)(A) of the Act, 8 U.S.C. § 1101(b)(1)(A) (2000). Thus, paternity is established.

[4] There were 1 million adjustment of status applications pending at the end of fiscal year 2000. *See Legal Immigration*, *supra*.

Naturalization Service frequently fails to adjudicate visa petitions based on marriage to a United States citizen in a timely fashion, causing a "small class of respondents, who are otherwise prima facie eligible for adjustment," to lose their opportunity to have their adjustment applications reviewed by an Immigration Judge. *Matter of Velarde*, 23 I&N Dec. 253, 255 (BIA 2002). In order to remedy this perceived injustice, the majority has determined to modify the above decisions to permit Immigration Judges to reopen removal proceedings to adjudicate adjustment of status applications based on visa petitions filed by spouses whose marriages were entered into during the pendency of removal proceedings, where, inter alia, the alien spouse submits clear and convincing evidence of the bona fide nature of the marriage and the Service does not oppose the motion.

Accepting the majority's implicit premise that the Service often acts with insufficient celerity on this species of visa petition, I would nevertheless not modify the above decisions, which essentially require that, before reopening can be granted, an alien must present the Immigration Judge with an approved visa petition. The majority does not gainsay the validity of a principal underlying rationale of *Matter of Arthur*, *supra*, and *Matter of H-A-*, *supra*, that an "inquiry into whether the evidence submitted in support of a visa petition is sufficient . . . to demonstrate prima facie eligibility for the preference sought would necessarily involve an in-depth examination into the merits of the petition [that] would . . . constitute a substantial . . . intrusion into the district director's authority over the adjudication" of such petitions. *Matter of Arthur*, *supra*, at 479. The majority evidently deems the intrusion justified by the fact that the *Arthur/H-A-* rule causes some applicants to lose their opportunity.

But changing otherwise salutary procedures because of resource constraints or allocations is of dubious merit. The Attorney General could tomorrow direct the Service to decide the pertinent class of visa petitions more speedily and provide additional resources to accomplish this task, whereupon the reason for today's decision would vanish, leaving its burdens (discussed below) in place without any corresponding benefits. It is not for the Board, I submit, to alter its procedures (and arguably furnish a *disincentive* to the investment of additional resources in this area) based on its implicit speculation that such a change in executive policy is not likely to be forthcoming.

Moreover, nothing else suggests the wisdom of revisiting *Arthur* and *H-A-*. Those cases were grounded on the need to enforce the policy enacted by Congress in the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, as amended in 1990, specifically finding that marriages entered into during deportation proceedings were suspect and presumptively fraudulent. *See* sections 204(g), 245(e) of the Immigration and Nationality Act, 8 U.S.C. §§ 1154(g), 1255(e) (2000). The majority cites as

a reason for reexamining *Matter of Arthur* and *Matter of H-A-* that the Service has recently revised and ameliorated its policy regarding joining *untimely* motions to reopen submitted after visa petitions are approved. But since the majority opinion is expressly limited to instances in which the motion is *timely*, this asserted justification is transparently insufficient. Accordingly, established principles of stare decisis dictate that the invitation to reconsider the Board's decisions should be rejected. *See generally Neal v. United States*, 516 U.S. 284 (1996) (indicating that stare decisis principles apply with utmost force to issues of statutory construction, because the legislature remains free to amend the statute); *Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197 (1991) (same). Notably, in the decade since *Matter of Arthur*, *supra*, was decided, neither the Congress through legislation nor an Attorney General through regulation has sought to amend the procedures established by that decision, notwithstanding numerous statutory and regulatory changes promulgated during that period.

Furthermore, the "modification" announced by the majority is not without its own costs. In addition to the problem identified in the quotation from *Matter of Arthur*, *supra*, the new doctrine will inevitably lead to disagreements among Immigration Judges, and panel disagreements within the Board itself, producing a lack of consistency in the determination of whether "clear and convincing" evidence of a strong likelihood of a bona fide marriage has been shown.[1] And relaxing the standard for consideration of motions to adjust status based on presumptively fraudulent marriages entered into during the pendency of removal proceedings will likely cause an increase in this type of fraud and a consequent increase in the workload of the Service, the Immigration Judges, and this Board.

Even if one were to conclude that the balance of interests lay with some modification of the *Matter of Arthur* and *Matter of H-A-* rule, the majority opinion would not attract my vote since it fails to assure the objective it seeks. As I read the opinion, the Service is required only to register its opposition to the alien's motion. The Service is not required to state the ground(s) for its opposition. Thus, if the Service wishes to preserve the status quo ante, it need only adopt a policy of filing a one-sentence

---

[1] Moreover, I predict that, in future cases, Immigration Judges and the Board will have considerable difficulty in applying the cumbersome test laid down by the majority: "clear and convincing evidence . . . indicating a strong likelihood that the respondent's marriage is bona fide." *Matter of Velarde*, *supra*, at 256. It is not clear whether this standard is meant to be equivalent to, or more rigorous than, the normal standard of prima facie eligibility applicable to motions to reopen. If it is intended to be more rigorous, then the majority opinion has failed to provide relief for the entire class of aliens sought to be benefitted—namely the "small class . . . who are otherwise prima facie eligible for adjustment." *Id.* at 255. Moreover, if it is more rigorous than prima facie eligibility, by what quantum? On the other hand, if no more rigorous test than prima facie eligibility is contemplated, then why use a formulation that is less than pellucid and will give rise to problems in application?

"Opposition" to motions to reopen that previously would have been barred under *Matter of Arthur* and *Matter of H-A-* in all cases in which the Service had not yet completed its investigation of the bona fides of the alien's marriage. The majority decision, far from remedying the perceived injustice on which it is predicated, may therefore prove to be nothing more than a source of useless additional paperwork.

Finally, the majority opinion appears to confer on Mr. Velarde-Pacheco an undeserved benefit. The logical outcome of the majority's opinion should be a remand to permit the Service at least 13 days to determine whether or not to oppose the motion. *See* 8 C.F.R. § 3.2(g)(3) (2001). In this case, the Service reasonably relied solely on governing precedent (i.e., the *Arthur* and *H-A-* decisions of the Board) to oppose the respondent's motion. It could not reasonably anticipate the "modification" of those decisions announced in today's ruling. Hence, there seems no reason, under the majority opinion, not to allow the Service to indicate whether or not it opposes the motion to reopen on some other basis, as will occur with all future cases under the new procedures. Granting the respondent's motion to reopen without affording the Service this opportunity is an unmerited windfall to this alien.

For all the above reasons, I respectfully dissent.