[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 22, 2006
THOMAS K. KAHN
CLERK

------------------------------------------
Nos. 05-10173 & 05-13712
Non-Argument Calendar
------------------------------------------

BIA No. A79-489-668

BASSAM E. FANGARY,

                                    Petitioner,

                     versus

U.S. ATTORNEY GENERAL,

                                    Respondent.

-----------------------------------------------------------------
Petition for Review of a Decision of the
Board of Immigration Appeals
-----------------------------------------------------------------

**(June 22, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Bassam E. Fangary, a native and citizen of Egypt, petitions for review of the orders of the Board of Immigration Appeals ("BIA") (1) affirming the immigration judge's ("IJ") denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), and (2) denying Fangary's motion to reopen proceedings. We dismiss the petition in part and deny it in part.

"We review only the [BIA's] decision, except to the extent it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA affirmed the IJ's denial of asylum, withholding of removal, and CAT relief without expressly adopting that decision: we review the BIA's decision. We review the BIA's factual determinations under the substantial evidence test. Id. at 1283-84. Under the highly deferential substantial evidence test, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284 (quotation omitted). "To reverse the [BIA's and] IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (emphasis added).

Fangary argues that the IJ and the BIA erred in determining that his asylum application was time-barred. He concedes that we have no authority to review a decision on whether he complied with the one-year time limit or established

2

extraordinary circumstances that would excuse a late filing. But Fangary, citing nonbinding authority about staying voluntary departure orders, contends that we can stay the one-year time limit.

Even after the enactment of the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231, we lack jurisdiction to review a decision about the untimeliness of Fangary's asylum application. See 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D); Chacon-Botero v. U.S. Attorney Gen., 427 F.3d 954, 957 (11th Cir. 2005). And we decline to apply the case law on staying voluntary departure orders in the way Fangary suggests. We dismiss the portion of Fangary's petition on his asylum claim.

But we do consider Fangary's arguments challenging the BIA's denial of withholding of removal and CAT relief. Fangary contends that he was persecuted in the past because of his religion (Christian) and that, because of the massacre of 21 Coptic Christians in El-Kosheh, Egypt, in January 2000 and the increasing strain between minority Coptic Christians and "Muslim fundamentalists," his life or freedom more likely than not would be threatened if he were forced to return to Egypt.

To seek withholding of removal, Fangary must show that his life would be threatened in Egypt on account of, in pertinent part, his religion. See Mendoza,

327 F.3d at 1287. Fangary "bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to" Egypt. Id. If credible, his testimony may be enough to satisfy this burden without corroboration. Id.

If Fangary establishes past persecution, it is presumed that his life or freedom would be threatened upon returning to Egypt. 8 C.F.R. § 208.16(b)(1)(i). If Fangary does not establish past persecution, he "may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country." Mendoza, 327 F.3d at 1287.

Substantial evidence supports the determination that Fangary did not suffer past persecution because of his religion. Fangary was the target of religious discrimination as a child and as a student: other children spat on him and threw dirt in his face, his Muslim teachers treated him with hostility, and Muslim college students insulted and beat him. But this poor treatment does not compel a conclusion that Fangary was persecuted. See, e.g., Mansour v. Ashcroft, 390 F.3d 667, 670-73 (9th Cir. 2004) (Egyptian Christian asylum applicant's claims of being struck with a leather swath, being slapped and struck by schoolteachers, and being chased by Muslim children throwing rocks did not rise to the level of persecution).

Fangary also points to mistreatment by Egyptian police on two occasions. Police interrogated him about the theft of 40 million Italian lira from his employer. Fangary, though, did not establish that he was singled out for his religion or that the police seriously mistreated him.[1] Police also questioned him about a magazine he published for children in Christian Sunday school; but Fangary conceded that he only was threatened with detention and not harmed. And although Fangary asserts that the police did not respond promptly on two occasions when he suffered mistreatment from private citizens,[2] Fangary conceded that he was injured slightly during one incident and was not injured during the other incident.

The evidence shows that Fangary at times suffered religion-based discrimination. But the evidence does not compel us to conclude that this discrimination rises to the level of persecution. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (stating that persecution is an "extreme concept" and that mere harassment does not amount to persecution); see also Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering").

---

[1]Fangary was interrogated for about 8 hours, during which he was not allowed to eat or use the bathroom, and he heard a coworker, who was Christian, yelling and being beaten.

[2]A group of Muslim teens threw bottles and stones through a grocery store window at Fangary and the Christian store owner, injuring Fangary; and Fangary's church was vandalized by a group of Muslims.

And substantial evidence supports the determination that Fangary failed to establish a well-founded fear of future persecution if he returned to Egypt. Recent State Department reports indicate that the government has taken steps to promote religious harmony and that conditions are improving for Christians in Egypt. Fangary's family remains in Egypt: he conceded that his family has not been harmed. And Fangary admitted that police responded when they were called after an attack on his father's church. The evidence does not compel us to conclude that Fangary was entitled to withholding of removal.

In a similar way, Fangary has not shown that it is more likely than not that he will be tortured by the Egyptian government or that the government will acquiesce in his torture if he is removed to Egypt. See Sanchez v. U.S. Attorney Gen., 392 F.3d 434, 438 (11th Cir. 2004). He, thus, has not shown his eligibility for CAT relief.

Fangary next argues that the BIA abused its discretion in denying his motion to reopen,[3] based on his allegedly bona fide marriage and on evidence he claims satisfies the requirements set out in Matter of Velarde-Pacheco, 23 I&N

_____

[3]We review the BIA's denial of a motion to reopen for an abuse of discretion. Abdi v. U.S. Attorney Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Our review is limited to determining "whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (citations omitted).

Dec. 253 (BIA 2002).[4]  Fangary submitted documents supporting his claim that his

marriage was bona fide in a supplement to the motion to reopen.  But our review

of the record shows that the BIA did not receive this evidence until after it had

denied his motion to reopen.  When the BIA denied his motion to reopen, Fangary,

thus, had presented no evidence--let alone the "clear and convincing evidence"

required by Velarde--demonstrating a strong likelihood that his marriage was bona

fide.  And although Fangary asserts that the BIA did not provide enough

explanation in its denial order, the BIA stated that it was denying his motion to

reopen because of the lack of clear and convincing evidence of a bona fide

marriage.  The BIA did not act arbitrarily or capriciously in denying the motion to

reopen.

PETITION DISMISSED IN PART, DENIED IN PART.

---

[4]In Velarde, the BIA explained that a properly filed motion to reopen for adjustment of status based on a marriage may be granted, at the BIA's discretion, if: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred on any procedural grounds; (4) clear and convincing evidence is presented indicating a strong likelihood that the marriage is bona fide; and (5) the INS does not oppose the motion.  23 I&N Dec. at 256.