[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 10, 2010
JOHN LEY
ACTING CLERK

_____

No. 09-11359
Non-Argument Calendar

_____

Agency No. A073-717-989

JUAN MAXIMIANO OCHOA-ARTEGA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 10, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Juan Maximiano Ochoa-Artega seeks review of the Board of Immigration Appeals' ("BIA") order denying his motion to reopen his removal proceedings so that he may seek adjustment of status as a battered spouse of a U.S. citizen. The BIA determined that his submitted evidence did not show clearly that he had been abused by his spouse. Because that determination was neither arbitrary nor capricious, we DENY his petition.

## I. BACKGROUND

Ochoa-Artega, a native and citizen of Mexico, entered the United States in 1993 without authorization. Administrative Record ("AR") at 250. In 1994, he filed an application for asylum. Id. at 244. In 1997, the former Immigration and Naturalization Service (currently the Department of Homeland Security) served him with a notice to appear ("NTA"), charging him with removability under INA § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Id. at 250-51.

In 1998, Ochoa-Artega failed to appear at his scheduled removal hearing. Id. at 240. The Immigration Judge ("IJ") proceeded with the hearing in absentia, found Ochoa-Artega removable as charged, deemed his asylum application abandoned, and ordered him removed to Mexico. Id. In 2006, Ochoa-Artega filed a motion to rescind the order of removal, arguing that he never received proper

2

notice of his removal hearing.  Id. at 208-10.  The IJ granted the motion and reopened the proceedings.  Id. at 202.

In 2007, Ochoa-Artega filed a motion to terminate the removal proceedings, arguing that his NTA was illegibly signed and contained no printed notification of the signing officer's name or title.  Id. at 199.  After the IJ denied the motion, Ochoa-Artega filed a motion to issue decision, requesting a decision on the merits so that he could appeal the denial of the motion to terminate.  Id. at 177-78.  The IJ then issued a decision finding Ochoa-Artega removable as charged and ordered him removed to Mexico.  Id. at 172-73.  The BIA dismissed Ochoa-Artega's appeal.  Id. at 128-29.  We denied his petition for review of the BIA's decision on grounds that: (1) no statutory or regulatory authority required the issuing officer's signature and title on the NTA, so the illegibility of the signature and title did not render the NTA defective; (2) the presumption of regularity granted to government officials resulted in a presumption that Ochoa-Artega's NTA was signed by the proper authorized official; and (3) even if the NTA was invalid, Ochoa-Artega was not substantially prejudiced by the defect.  See Ochoa-Artega v. U.S. Att'y Gen., 322 Fed. Appx. 768, 771-72 (11th Cir. 2009) (per curiam) (unpublished).

While his petition for review was pending before us, Ochoa-Artega filed with the BIA a motion to reopen his removal proceedings so that he could apply for adjustment of status pursuant to 8 U.S.C. § 1255(a).  AR at 5-7.  He argued that

3

he was prima facie eligible for adjustment of status because he had filed a Form I-360, Petition for Amerasian, Widow, or Special Immigrant ("VAWA[1] self-petition"), for a visa "based on the abusive relationship with his current United States citizen spouse." Id. at 5-6.

In support of his motion to reopen, Ochoa-Artega attached numerous documents, including the following: (1) his pending I-360 application to adjust his status to self-petitioning spouse of an abusive U.S. citizen; (2) his I-485 application to adjust his status to permanent resident of the U.S.; (3) a 2001 marriage license for Ochoa-Artega and Daysi Medina ("Daysi"); (4) Daysi's certificate of U.S. citizenship; (5) a statement by Juan Carlos Godinez, a friend of Ochoa-Artega's for ten years, that he once saw Daysi hit and scratch Ochoa-Artega after Ochoa-Artega hugged their young daughter while wearing his dirty work clothes, resulting in Daysi being taken to jail for domestic violence; (6) two letters from the Florida State Attorney's Office, dated August 2003 and August 2008, requesting Ochoa-Artega's input as a victim in order to determine whether to file formal criminal charges against Daysi for domestic violence; and (7) an April 2008 order from a Florida circuit court dismissing for lack of evidence Daysi's petition for a protective order against domestic violence by Ochoa-Artega. Id. at 13-17, 21-24, 26, 28, 32, 36, 47, 54.

---

[1] VAWA stands for the Violence Against Women Act of 1994.

Ochoa-Artega also submitted two police reports. According to the first report, dated 15 May 2008, Daysi and Ochoa-Artega had been married for seven years but were separated and had filed for divorce. Id. at 43. Daysi reported that when she went to pick up their daughter at Ochoa-Artega's house, Ochoa-Artega pulled her inside, grabbed her by the neck, pushed her against the wall, put his forearm across her mouth, spit in her face, took her cell phone and keys away from her, and blocked the doorway. Id. at 42-43. Ochoa-Artega told the police a different story, however. He claimed that it was Daysi who spit in his face, pushed him, and scratched his hand. Id. at 43. Ochoa-Artega said he blocked the door to prevent her from entering because he believed he had custody of their daughter for the night. Id. The police report noted that Daysi had no marks on her arms or neck, and Juan had no marks on his hand. Id. Because the police officer was unable to determine who was the primary aggressor, the report noted that "[c]harges are being filed on Daysi and Juan for battery on each other." Id. The second report, dated 9 August 2008, stated that charges of battery/domestic violence were being filed against Daysi for allegedly hitting Ochoa-Artega on the face, shoulders, and back during an argument related to their pending divorce. Id. at 51.

The BIA found insufficient evidence to support Ochoa-Artega's motion to reopen the proceedings. Id. at 2. According to the BIA, "[i]t is not clear from the

5

evidence of abuse in the record who was the abuser and who was the victim in [Ochoa-Artega's] marriage." Id. As an example, the BIA cited one of the police reports. The BIA concluded that Ochoa-Artega failed to make a prima facie showing of eligibility for relief and denied the motion to reopen. Id.

This petition for review followed. Ochoa-Artega contends that the BIA abused its discretion in denying his motion to reopen because he established by clear and convincing evidence that he was in a bona fide marriage with an abusive spouse who was a U.S. citizen. Ochoa-Artega further argues that the BIA ignored evidence of abuse, engaged in speculative fact-finding, improperly applied its own precedent, and issued a vague decision.

## II. DISCUSSION

"We review the BIA's denial of a motion to reopen for an abuse of discretion." Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005) (per curiam). In order to reverse, the BIA must have exercised its discretion in an arbitrary and capricious manner. See id.

The BIA may deny a motion to reopen on at least three independent grounds: (1) the failure to establish a prima facie case of eligibility for adjustment of status; (2) the failure to introduce material evidence that was previously unavailable; and (3) "a determination that despite the alien's statutory eligibility for relief, [that alien] is not entitled to a favorable exercise of discretion." Al

6

Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001). "Motions to reopen are

disfavored, especially in a removal proceeding, where, as a general matter, every

delay works to the advantage of the deportable alien who wishes merely to remain

in the United States." Abdi, 430 F.3d at 1149 (quotation marks and citation

omitted). As a result, the movant "bears a heavy burden, and must present

evidence of such a nature that the BIA is satisfied that if proceedings before the IJ

were reopened, with all attendant delays, the new evidence offered would likely

change the result in the case." Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir.

2006) (per curiam) (quotation marks, citation, and alterations omitted).

An alien spouse of an abusive citizen may self-petition for classification as

an immediate relative or a preference immigrant by filing a Form I-360. See 8

C.F.R. § 204.1(a)(3) (2009). In that self-petition, the alien must demonstrate to the

Attorney General that:

> (aa) the marriage or the intent to marry the United States citizen was
> entered into in good faith by the alien; and
>
> (bb) during the marriage or relationship . . . the alien . . . has been
> battered or has been the subject of extreme cruelty perpetrated by the
> alien's spouse or intended spouse.

8 U.S.C. § 1154(a)(1)(A)(iii)(I) (2009). The phrase "was battered by or was the

subject of extreme cruelty"

> includes, but is not limited to, being the victim of any act or
> threatened act of violence . . . which results or threatens to result in

7

physical or mental injury. Psychological or sexual abuse or exploitation . . . shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are a part of an overall pattern of violence. The qualifying abuse must have been committed by the citizen or lawful permanent resident spouse, must have been perpetrated against the self-petitioner . . . and must have taken place during the self-petitioner's marriage to the abuser.

8 C.F.R. § 204.2(c)(1)(vi). The Attorney General, in turn, has the discretion to adjust the status of an alien VAWA self-petitioner to that of a lawful permanent resident. See 8 U.S.C. § 1255(a) (2009).

In In re Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002), the BIA held that a motion to reopen may be granted under certain conditions, in the exercise of discretion, to enable an alien to pursue an adjustment of status based on a marriage entered into after the commencement of removal proceedings. The required conditions are that: "(1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by . . . any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the [alien's] marriage is bona fide;" and (5) the government does not oppose the motion. Id. At issue here is the fourth requirement. Ochoa-Artega concedes that his eligibility for adjustment of status is not based merely on a bona fide marriage, as was the case in Velarde-Pacheco, but on a marriage to an abusive spouse. Nevertheless, Ochoa-Artega contends that he

8

has presented clear and convincing evidence that he is eligible for the visa petition as an abused spouse.

We disagree. While Ochoa-Artega's long-time friend described one incident of physical abuse by Daysi, his friend's implication that the incident resulted in Daysi's arrest for domestic violence was not corroborated by a police report. Likewise, Ochoa-Artega did not supplement the letters from the Florida State Attorney's Office with any evidence that the government ultimately filed domestic violence charges against Daysi. The May 2008 police report merely presents a swearing contest between Ochoa-Artega and Daysi, neither of whom sustained any visible injuries. The scratches on Ochoa-Artega's arm and back lend some credence to his claim that Daysi hit him in August 2008. However, noticeably absent from the police report is Daysi's account of the incident, as she had already left the area before the police could question her. There is also no evidence that Daysi was indicted or convicted for this matter. Finally, Daysi's failed attempt to obtain a protective order against Ochoa-Artega does not establish that Ochoa-Artega was a battered spouse. As the BIA noted, it is unclear from the submitted evidence "who was the abuser and who was the victim." AR at 2. As such, the evidence does not satisfy Ochoa-Artega's "heavy burden" of showing that he had been battered or was the subject of extreme cruelty perpetrated by Daysi. Ali, 443 F.3d at 813. The BIA therefore did not act arbitrarily or capriciously in

determining that Ochoa-Artega failed to establish a <u>prima</u> <u>facie</u> case of eligibility for adjustment of status as an abused spouse.

Further, none of Ochoa-Artega's other arguments concerning the BIA's abuse of discretion have merit. First, the BIA correctly applied <u>Velarde-Pacheco</u> to determine that Ochoa-Artega failed to submit sufficient evidence indicating that he was a battered spouse. <u>See</u> <u>Velarde-Pacheco</u>, 23 I. & N. Dec. at 256. Second, the BIA was not required to reconcile his and Daysi's differing accounts of the May 2008 incident. It was Ochoa-Artega's burden to show that this new evidence would likely change the result in his removal proceedings if they were reopened. <u>See</u> <u>Ali</u>, 443 F.3d at 813. Third, the BIA did not focus exclusively on a single police report. The BIA merely cited one report as an example of the conflicting nature of Ochoa-Artega's evidence. Finally, we disagree with Ochoa-Artega's assertion that the BIA's decision was vague and inadequate. So long as the BIA "has given reasoned consideration to the petition, and made adequate findings," the BIA need not specifically address each claim or each piece of evidence presented. <u>Tan v. U.S. Att'y Gen.</u>, 446 F.3d 1369, 1374 (11th Cir. 2006) (quotation marks and citation omitted) (reviewing the denial of an application for withholding of removal). The BIA's decision satisfies those requirements here.

10

### III.  CONCLUSION

Based on the foregoing, we conclude that the BIA acted within its discretion in denying Ochoa-Artega's motion to reopen his removal proceedings. Accordingly, we **DENY** Ochoa-Artega's petition for review.

**PETITION DENIED.**