NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0008n.06
Filed: January 7, 2009

No. 07-4431

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LYDIA MASON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | On Petition for Review of an |
| v. | ) | Order of the Board of |
| | ) | Immigration Appeals. |
| MICHAEL B. MUKASEY, United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent. | | |

Before:     BOGGS, Chief Judge; CLAY, Circuit Judge; and BERTELSMAN, District
Judge.

**BOGGS, Chief Judge**.  Petitioner Lydia Mason, a citizen of Liberia, filed a motion to reopen her

case before an Immigration Judge ("IJ") to seek an adjustment of status on the basis of her marriage

to a United States citizen.  The motion was denied as untimely.  Mason's motion to reconsider the

denial of the motion to reopen was likewise denied by the IJ and affirmed by the Board of

Immigration Appeals ("BIA") without a separate opinion.  Mason now appeals from the BIA's

decision.  Mason conceded that her motion to reopen, filed nearly eight years after a final order of

removal was issued against her, was untimely.  She now argues that the IJ and the BIA abused their

discretion by refusing to use their discretionary authority to waive the applicable 90-day filing

deadline on "humanitarian grounds."  Mason submits that in the event of her removal, no one would

be available to care for her United States citizen husband, who is diagnosed with cancer, and their

No. 07-4431
Mason v. Mukasey

two United States citizen children, ages eight and four.  Because we are without power to review the

BIA's decision not to exercise its discretionary power, we dismiss the petition.

**I**

Lydia Mason, a citizen of Liberia, was admitted to the United States on December 7, 1996

as a non-immigrant visitor, authorized to remain no later than June 6, 1997.  Mason filed an

application for asylum, withholding of removal and protection under the Convention Against Torture

("CAT") on May 26, 1998.  Her application recounted the following: both of her parents were

assassinated as a result of their tribal ethnicity (Krahn) and their affiliation with the government of

former president Samuel K. Doe; she was arrested, raped, and held captive for about six months by

Charles Taylor's National Patriotic Front of Liberia ("NPFL").  She then fled, was arrested again by

the NPFL, and eventually escaped to Guinea; her brother was also arrested and executed by Taylor's

soldiers.  On September 25, 1998, Mason's application was denied, apparently because it was not

filed within one year of entry.[1]  The IJ also denied Mason's application for voluntary departure and

ordered her removed to Liberia.  On the date the order of removal was entered, Mason was engaged

---

[1] There is some lack of clarity with regard to the grounds for denial because the IJ's September 25, 1998 decision was oral and not transcribed.  While Mason states that her application was denied because it was not filed within one year of entry, her appeal from that decision (included in the record before us) appears to identify alternative and/or additional grounds for the denial.  In particular, Mason asserted the following: the IJ "did not take into account the overwhelming evidence of past persecution based upon the respondent's affiliation with the former Doe government as well as her Krahn ethnicity"; the IJ erroneously found Mason incredible on the basis of "minor inconsistencies in her testimony  and her app[l]ication" with regard to the "length of time incarcerated," and on the basis of her working without authorization upon arrival to the U.S.; and the IJ denied Mason due process by denying voluntary departure without asking any questions or making any statements about his grounds for concern on the issue.

to be married to Humphrey Woodson ("Woodson"), then a legal permanent resident, and was six months pregnant with his child.

Mason's appeal from the removal order was filed one day late by her attorney, resulting in the BIA's dismissal of the appeal as untimely on December 11, 1998.[2] The BIA's dismissal transformed the September 25, 1998 decision into a final order of removal. In a signed and sworn affidavit, Mason states that she was not aware of the dismissal of her appeal. She explained that she moved to Texas and lost touch with her attorney, who relocated his office, and whom she was unable to locate. Mason communicated her relocation to the erstwhile INS and her attorney, but never received any communications from either regarding the status of her appeal. Because she was not aware of the BIA's action, Mason did not appeal the BIA's decision.

In August 2001, Mason married Woodson, who became a United States citizen in January 2001.[3] The couple has two children, now ages eight and four, both of whom are United States citizens. In the eight years that intervened between the final removal order and her motion to reopen, Mason has obtained and renewed an Employment Authorization Document (Form I-765) from the INS and later from the Department of Homeland Security ("DHS") several times in Texas. Mason

---

[2]The deadline for filing the appeal was Monday, October 26, 1998; the United States Postal Service's Express Mail, the service that guarantees overnight delivery, shows an inexplicably unsuccessful "delivery attempt" of Mason's appeal on the date of the deadline at 11:15 am. The delivery was made the following day, Tuesday, October 27.

[3]There is some lack of clarity with regard to the naturalization date of Mason's husband. Mason states that it is January 11, 2001, while the Attorney General states it is January 11, 2003. The quality of the photocopy of the Naturalization Certificate is poor and the year cannot be unmistakably discerned. Ultimately, the date of Mason's husband's naturalization is of little consequence to the disposition of the issue.

also states that the INS requested that she have her biometrics taken in Texas in 2001. Every contact with the relevant immigration authorities prior to April 2006 gave Mason the impression that "all was well." At some point prior to April 2006, Mason sought to adjust her status to that of a legal permanent resident on the basis of her marriage to a United States citizen. Accordingly, Mason's husband filed an alien relative visa petition on her behalf. Mason states that she learned about her final order of removal only when she was arrested during an adjustment of status interview in Dallas, Texas on April 6, 2006.[4] On June 27, 2006, Mason filed a motion to reopen her case for consideration of adjustment of her status to that of a lawful permanent resident on the basis of her marriage, attaching the following: a copy of a notice that an alien relative petition (Form I-130) was received by DHS on April 14, 2006; a copy of Mason's and Woodson's marriage certificate; a copy of Woodson's Naturalization Certificate; birth certificates of Mason's and Woodson's children; police records attesting to Mason's lack of a criminal record; a copy of Mason's 1996 visa to enter the United States; a copy of an Employment Authorization card issued in March 2000; affidavits from both Mason and Woodson; and letters from Mason's employers attesting to her great value as employee in support of Mason's attempts to reopen her case.

On July 21, 2006, the IJ denied Mason's petition to reopen as untimely. On October 13, 2006, Mason filed a supplement to the motion to reopen, attaching a notice from the DHS that an alien relative petition (Form I-130) on her behalf was approved on September 14, 2006 and a copy

---

[4]Presumably, the arrest occurred in the course of consideration of Woodson's alien relative visa petition, prior to the approval of the petition. The approval notice gives a "receipt date" of April 20, 2006. Neither the parties' briefs nor the record reveal the exact order of events.

of the DHS's Order of Supervision. On October 18, 2006, the IJ reissued his July 21 order, which was originally mailed in error to the wrong attorney. Because the time for Mason to appeal that decision has expired, the IJ reconsidered the July 21 decision sua sponte and incorporated that decision into the October 18, 2006 order.

On November 11, 2006, Mason filed a "Motion to Reconsider on Humanitarian Grounds" before the IJ, requesting that the court waive the 90-day time limit for the motion to reopen based on humanitarian grounds. Mason stated that her United States citizen husband has been diagnosed with cancer, and there would be no one to care for her husband and United States citizen children should she be removed, inflicting hardship on the family. Mason has attached, in addition to documents previously submitted in support of her motion to re-open, a notice from the DHS that her employment authorization (Form I-765) was approved on October 16, 2006 and documentation of Woodson's medical condition (thyroid cancer).

On December 14, 2006, the IJ denied the motion to reconsider, reiterating that the September 25, 1998 order of removal was final, and that the 2006 motion to reopen was untimely. The IJ concluded that Mason did not allege any errors of fact or law in the IJ's prior denial of the motion to reopen, thereby failing to raise a viable reason for a reconsideration. Insofar as Mason was asking for the IJ to exercise his sua sponte authority to reopen, the IJ declined to do so.

On January 12, 2007, Mason appealed to the BIA. On September 27, 2007, the BIA affirmed the IJ's decision without a separate opinion. Mason now appeals the BIA's decision affirming the denial of her motion to reconsider the prior denial of her motion to reopen.

## II

When "the BIA affirm[s] the IJ's decision without opinion, we review the IJ's decision as the final agency decision." *Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005). Because the BIA affirmed without an opinion in this case, the IJ's December 14, 2006 denial of the motion to reconsider the motion to reopen is the final agency decision to be reviewed. A decision to deny a motion for reconsideration is reviewed for abuse of discretion. *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003).

A motion to reconsider is a "request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *In re O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006) (internal quotation marks and citation omitted). Such a motion shall "specify[] the errors of fact or law in the Immigration Judge's prior decision . . . supported by pertinent authority." 8 C.F.R. §1003.23(b)(2). In the disposition of Mason's motion to reopen, the IJ relied on the untimeliness of the motion. With few specified exceptions, motions to reopen must be filed within 90 days after the final administrative order of removal. 8 U.S.C.S. § 1229a(c)(7)(C)(i); C.F.R. §1003.23(b). Mason does not qualify for the exceptions to the 90-day deadline because she does not ask to reopen to seek asylum and withholding of removal on the basis of changed country conditions. *See* 8 U.S.C.S. § 1229a(c)(7)(C)(ii); 8 C.F.R. §1003.23(b)(4).

In the motion to reconsider that disposition, Mason does not identify errors of fact or law in the IJ's decision. On the contrary, Mason concedes that the IJ was correct both with respect to the fact operative to his decision – the timing of her motion to reopen – and with respect to the

applicable law barring untimely motions. Mason simply requests that the immigration court waive the 90-day filing limitation on "humanitarian grounds."

In particular, she argues that in deciding whether to exercise discretion in Mason's favor, the IJ and the BIA should have taken into account: (1) her bona-fide marriage to a United States citizen; (2) the unavailability of the adjustment of status during her removal proceedings in 1998, when her fiance was still a permanent resident; (3) the medical condition of her now-citizen husband (diagnosed with cancer); (4) the hardship that would result from Mason's removal for her husband and two children, all of whom are United States citizens; (5) her lack of control over the timeliness of her 1998 appeal, which she entrusted to an apparently competent attorney – and he to a premium U.S. Government postal service; (6) her inability to find out the outcome of her appeal, notwithstanding several attempts to contact the attorney, including traveling to Detroit to find him; and finally, (7) the fact that Mason never received a consideration on the merits of her case.

As much as we sympathize with Mason's circumstances, neither "hardship" nor "humanitarian grounds" exempt her from the statutory 90-day deadline.  Aside from the specified exception to the filing deadline (asylum on basis of changed country conditions), motions to reopen may be granted only in the exercise of an IJ's or the BIA's discretion.  8 C.F.R. §1003.23(b)(3); 8 C.F.R. §1003.2(a).  This is the only basis on which the court could have considered Mason's circumstances and agreed to reopen.

The IJ and the BIA have "discretion to deny a motion to reopen *even if the moving party has established a prima facie case for relief.*"  8 C.F.R. §1003.23(b)(3); *see also* 8 C.F.R. §1003.2(a) (emphasis added).  The discretion to reopen or reconsider when the moving party has *not* established

a prima facie case for relief – such as when the motion is untimely - is not unlimited, but, as the BIA explained, to be exercised only "in exceptional situations." *In re J-J, I.&N.* Dec. 976, 984 (BIA 1997). "The power to reopen on our own motion is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." *Ibid*.

Mason cites *In re Velarde Pacheco*, 23 I. & N. Dec. 253 (BIA 2002) to support her contention that discretion should have been exercised to reopen her case. *In re Velarde Pacheco*, unfortunately, does not help Mason's case: in that case, the BIA stated that "a properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment [of status on the basis of marriage to a U.S. citizen or lawful permanent resident] where the following factors are present: (1) *the motion is timely filed*; . . . (3) the motion is not barred . . . on any other procedural grounds." 23 I. & N. Dec. at 256 (emphasis added). Mason's motion was not timely, a contingency with regard to which the BIA expressly declined to state its policy. *Ibid*. ("We emphasize that we do not endorse granting adjustment of status in every case in which a respondent makes a prima facie showing of eligibility, nor do we address motions to reopen filed after the 90-day deadline has passed.").

On the motion to reconsider, the IJ stated that insofar as Mason urged the court to exercise its sua sponte powers, "the Court elect[ed] not to do so." The BIA then affirmed without a separate opinion.[5] Regrettably for Mason, we are without power to review the BIA's decision not to exercise

---

[5] The BIA "shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that

its discretionary power to reconsider or to reopen upon an untimely motion. *Rasi v. Mukasey*, 256 F. App'x 763, 765 (6th Cir. 2007) (per curiam) (holding that this court lacks jurisdiction to review the BIA's discretionary decision declining to use its sua sponte authority to grant petitioner's untimely motion to reopen). *See also Harchenko v. INS*, 379 F.3d 405, 410-11 (6th Cir. 2004); *accord Zhao Quan Chen v. Gonzales*, 492 F.3d 153 (2nd Cir. 2007); *Zhang v. Gonzales*, 469 F.3d 51, 53 (1st Cir. 2006); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474-75 (3d Cir. 2003); *Doh v. Gonzales*, 193 F. App'x 245, 246 (4th Cir. 2006); *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249-50 (5th Cir. 2004); *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003); *Ekimian v. INS*, 303 F.3d 1153, 1157-59 (9th Cir. 2002); *Belay-Gebru v. INS*, 327 F.3d 998, 1000-01 (10th Cir. 2003).

Although we are unable to influence the BIA or the DHS in their discretionary decisions, we note that the facts of Mason's case strike us as sufficiently "exceptional" to merit consideration for discretionary relief. It is worth noting that had Mason not decided to take affirmative action to comply with the United States immigration laws (by seeking readjustment of status), she would in all likelihood continue living undisturbed, albeit unlawfully, with her family. She was repeatedly authorized – by the same agency that now seeks her removal – to work in the United States, has apparently been employed by the same employer since March 2000, who referred to Mason as "an outstanding employee" and stated that her position will be held for her "as long as possible." The

---

any errors in the decision under review were harmless or nonmaterial; and that (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." 8 C.F.R. §1003.1(e)(4).

fact that the DHS has not acted upon the 1998 final order of removal over the course of eight years

suggested strongly that no action would have been taken – but for Mason's decision to try to adjust

her status in accordance with the law.

As the government's brief notes, "[i]n light of Petitioner's claim of hardship, her recourse

may be in the form of a request for deferred action from the DNS." Respondent's Br. at 14 n.11.

"Deferred action" refers to an exercise of discretion by the DHS, whereby no action is taken against

a deportable or removable alien – whether "for humanitarian reasons or simply for its [DHS's] own

convenience." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999). As

one treatise describes it:

> To ameliorate a harsh and unjust outcome, the INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation. This commendable exercise in administrative discretion, developed without express statutory authorization, originally was known as nonpriority and is now designated as deferred action. *A case may be selected for deferred action treatment at any stage of the administrative process. Approval of deferred action status means that,* for the humanitarian reasons described below, *no action will thereafter be taken to proceed against an apparently deportable alien*, even on grounds normally regarded as aggravated.

*Ibid.* (emphasis added) (quoting 6 C. GORDON, S. MAILMAN, & S. YALE-LOEHR, IMMIGRATION LAW

AND PROCEDURE § 72.03[2][h] (1998)). In a November 17, 2000 memorandum, the then-INS

Commissioner Doris Meissner summarized the guiding principles behind the exercise of such

discretion, noting in particular that length of residence in the United States, a clean criminal record,

and humanitarian concerns weigh in favor of a favorable exercise of discretion. Memorandum from

Doris Mesissner, INS Comm'r, to Regional Directors et al., 7 (Nov. 17, 2000). "Family ties in the

United States," and "medical conditions affecting the alien or the alien's family" are mentioned as

exemplary humanitarian concerns.[6] *Ibid*. All these factors – combined with the loss of opportunity to appeal two prior decisions (the 1998 final order of removal and the July 21, 2006 denial of the motion to reopen) through no fault of her own – speak in favor of deferring action to effect the removal of Mason. We call these factors to the attention of Mason's counsel, government counsel, and the DHS.

### III

For the reasons stated above, we DISMISS Mason's petition.

---

[6]Since the abolition of the INS, the DHS has continued to defer action. *See e.g.*, Lenni B. Benson, *You Can't Get There from Here: Managing Judicial Review of Immigration Cases*, 2007 U. CHI. LEGAL FORUM 405, 443 n.115 (noting that the DHS will defer action on final orders for a variety of reasons, although no statistical information is available as to the frequency of such cases).