**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0367n.06

No. 08-3840

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**May 26, 2009**

LEONARD GREEN, Clerk

DIEGO CRUZ LOPEZ GONON, )
)
Petitioner, )       ON PETITION FOR REVIEW
)       OF AN ORDER OF THE BOARD
v. )       OF IMMIGRATION APPEALS
)
ERIC H. HOLDER, JR.,[*] )       **O P I N I O N**
Attorney General of the United States, )
)
Respondent. )
_____)

**BEFORE:  MOORE and WHITE, Circuit Judges; and OLIVER, District Judge.[**]**

**SOLOMON OLIVER, JR., District Judge.**   Petitioner Diego Cruz Lopez Gonon

("Petitioner" or "Lopez") petitions this court for review of the final order of the Board of

Immigration Appeals ("BIA"), arguing that the BIA erred in affirming the denial of his applications

for cancellation of removal, asylum, and voluntary departure.  For the following reasons, we

**DISMISS** the petition in part for lack of subject matter jurisdiction and **DENY** the remainder of the

petition on the merits.

**I.  FACTS AND PROCEDURAL HISTORY**

_____

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H.
Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as
Respondent in this case.

[**]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

1

## A. Lopez's Background

At the age of 12, Lopez escaped from Guatemala after guerrillas set fire to his house, killing his parents and his two sisters. (Transcript of Removal Proceedings ("Transcript"), Appendix ("Appx.") at 57-58.) Because of his young age at the time of the tragedy, Lopez does not remember exactly when the incident occurred or why they targeted his family. After reaching the United States, he was taken in by a woman named Awadalia Jose Matias ("Matias"). (Transcript, Appx. at 60.) Lopez lived with Matias at various times between 1990 and 1999, before he married his current wife and moved to Tennessee. (*Id.*) Lopez's wife is also a citizen of Guatemala, living in the United States without legal status. (*Id.*) Lopez has two young daughters who were born in the United States. (*Id.*) To support his family, Lopez works for a poultry company, packaging chicken parts. (Transcript, Appx. at 61.)

Lopez admits to committing various crimes while living in the United States. (Transcript, Appx. at 64.) He pled guilty to various offenses, including driving while intoxicated, driving with a suspended license, giving false information, and theft. (Transcript, Appx. at 64.) He also admitted on cross-examination during his removal proceedings that he did not file tax returns for 1996, 1997, and 1998. (Transcript, Appx. at 68.) Additionally, he was arrested in 1998 for driving with a suspended license, driving under the influence of alcohol, and a felony hit and run involving property. (Transcript, Appx. at 79-80.) After his latest arrest in 1998, he stopped drinking alcohol and began regularly attending church. (Oral Decision and Order of IJ ("IJ's Order"), Appx. at 39.) During the removal proceedings, his deacon testified that he reformed his conduct and is now a role model for other church members. (*Id.*)

## B. Lopez's Proceedings

Four years after Lopez entered the United States from Guatemala, he filed an application for asylum with the Department of Homeland Security ("DHS"). (Transcript, Appx. at 54.) His application was denied, and he was placed in removal proceedings on September 27, 2006. At the hearing, he admitted that he was not a citizen of the United States and entered the country in 1990 without being admitted or paroled after inspection by an Immigration Officer. (Resp. Br. at 4; Notice to Appear, Appx at 118.) The IJ sustained the charge of removability, and Lopez, in turn, requested cancellation of removal, asylum, and withholding of removal, or, in the alternative, voluntary departure. (Transcript, Appx. at 74-75.)

The IJ, in ruling on Lopez's application for cancellation of removal, noted that to be eligible for this relief, Lopez must demonstrate that: (1) he has been present in the United States for a continuous period of no less than ten years; (2) he has been a person of good moral character during that period; (3) he has not been convicted of any crime involving moral turpitude; and (4) he has established that removal presents exceptional and extremely unusual hardship to a family member who is a citizen or lawful permanent resident of the United States. (IJ's Order, Appx. at 41-42 (citing INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1)). The IJ concluded that Lopez was not eligible for this relief because he failed to demonstrate both good moral character and exceptional and extremely unusual hardship to his family members. (IJ's Order, Appx. at 42.) The IJ found that he failed to demonstrate good moral character based on the fact that he failed to pay taxes, acquired various convictions, and failed to list certain criminal history on his DHS application. (IJ's Order, Appx. at 43.) He further noted that although Lopez's deacon testified that he had reformed his ways, such evidence could not "gainsay a long history of problems with the law." (IJ's Order, Appx. at 45.)

With regard to the hardship factor, Lopez argued that his daughters would have diminished educational opportunities in Guatemala. (IJ's Order, Appx. at 46.) He also argued that although they spoke Spanish, their accents were different from those in Guatemala, and they would be subject to ridicule or other retaliation as a result. (*Id.*) The IJ held that these reasons were insufficient to establish exceptional and extremely unusual hardship. (*Id.*)

The IJ also denied Lopez's application for asylum. He noted that although Lopez suffered past persecution in Guatemala, he failed to demonstrate that the burning of his house by the guerillas was on account of one of the protected grounds for asylum. (IJ's Order, Appx. at 49.) Furthermore, he noted that the country's conditions had changed because the civil war had ended, making it unlikely that he would face similar persecution upon his return. (IJ's Order, Appx. at 50.) The IJ concluded that Lopez failed to meet his burden for asylum and therefore failed to meet the higher standard for withholding of removal. (IJ's Order, Appx. at 50-51.) Lastly, the IJ concluded that he did not qualify for voluntary departure based on his failure to demonstrate good moral character. (IJ's Order, Appx. at 50.)

Lopez appealed the IJ's decision to the BIA, arguing that the IJ erred in finding that Lopez did not possess good moral character, that removal would not result in exceptional and extremely unusual hardship for his daughters, and that he was not entitled to asylum and voluntary departure. (Pet'r Br. on Appeal of IJ's Order, Appx. at 13.) The BIA dismissed the appeal, finding that even if Lopez was not ineligible for cancellation of removal on moral character ground, the IJ correctly determined that Lopez failed to demonstrate exceptional and extremely unusual hardship to his daughters. (BIA's Order, Appx. at 2-3.) The BIA also found that the IJ correctly determined that Lopez was not entitled to asylum or withholding of removal because he failed to demonstrate the

required nexus between the burning of his home and one of the protected grounds for asylum. (BIA's Order, Appx. at 3.) The BIA also upheld the IJ's denial of voluntary departure. (*Id.*)

Lopez appeals the decision of the BIA to this court, offering three arguments to support his petition. First, he argues that both the IJ and BIA erred in denying his request for voluntary departure. Second, he contends that the IJ violated his due process rights in determining that Lopez failed to establish exceptional and extremely unusual hardship. Lastly, he argues that the BIA erred in denying his application for asylum because Lopez established a well-founded fear of persecution if he returned to Guatemala.

## II. STANDARD OF REVIEW

The court reviews both the BIA and the IJ's decision to the extent that the BIA agreed with the IJ. *See Guang Run Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004); *Nuru v. Gonzales*, 404 F.3d 1207, 1215 (9th Cir. 2005). The court reviews the factual findings underlying the final order, including whether an alien qualifies for relief and protection from removal, under the substantial evidence standard. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1, 482-83 (1992); *Marku v. Ashcroft,* 380 F.3d 982, 986 (6th Cir. 2004) (citations omitted). Under this deferential standard, administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252 (b)(4)(B); *see also Marku,* 380 F.3d at 986. The court reviews *de novo* alleged due process violations in removal proceedings. *Vasha v. Gonzales,* 410 F.3d 863, 872 (6th Cir. 2005) (citation omitted). The existence of subject matter jurisdiction is also reviewed *de novo*. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006) (citing *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003)).

## III. LAW AND ANALYSIS

## A. Voluntary Departure

Petitioner argues that the BIA erred in denying Lopez's request for voluntary departure as a matter of discretion. Respondent contends that this court lacks jurisdiction to review this issue. Under Immigration and Nationality Act ("INA") § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C. § 1229c]." Section 1229c prescribes the conditions for voluntary departure. Petitioner fails to present any argument for why this court has subject matter jurisdiction. We, therefore, dismiss Petitioner's appeal to this extent, as this court lacks subject matter jurisdiction to review the agency's denial of voluntary departure.

## B. Cancellation of Removal

Petitioner also argues that the IJ erred with regard to the cancellation of removal determination and violated his due process rights "by failing to take into account that all factors present, if considered as a whole, clearly establish that Mr. Lopez's children will suffer exceptional and extremely unusual hardship if he is removed to Guatemala." (Pet'r. Br. at 16.) Respondent argues, as it did with regard to voluntary departure, that this court lacks jurisdiction to review this determination pursuant to INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i). While Petitioner concedes that this court lacks jurisdiction to review cancellation of removal determinations pursuant to Section 242(a)(2)(B)(i) of the INA, Petitioner argues that he is not requesting such review. Instead, he claims that he is requesting that the court review the constitutional issue of whether the IJ violated his due process rights in finding that he was not eligible for cancellation of removal. Lopez correctly notes that this court has jurisdiction to review colorable constitutional claims and

questions of law.  *See Alumuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006); 8 U.S.C. § 1252(a)(2)(B)(i).

Petitioner's constitutional claim, however, is merely an attempt to circumvent Section 242(a)(2)(B)(i) of the INA, which clearly prohibits this court from reviewing the IJ's discretionary determination.  A previous Sixth Circuit panel found a similar attempt to circumvent this clear language unavailing.  In *Alshareqi v. Mukasey*, 295 F. App'x 2, 6 (6th Cir. 2008), the IJ concluded that the petitioner failed to demonstrate the factors necessary for cancellation of removal.  The petitioner argued on appeal that the IJ denied his due process rights by failing to "demonstrate that it properly weighed all of the relevant factors used in assessing hardship."  *Id.* at 5.  The court rejected this argument, finding that "[the petitioner's] due process claim is little more than an attempt to have us review the unreviewable discretionary determination of . . . undue hardship."  *Id.* at 6.  The court concluded it did not have jurisdiction to review the issue.  *Id.*  In the instant case, Petitioner asserts before this court an identical due process claim that the IJ erred in determining exceptional and extremely unusual hardship factor in an attempt to circumvent Section 242(a)(2)(B)(i) of the INA.  In accordance with *Alshereqi,* this court lacks jurisdiction to review the IJ's decision in this regard.

Even if the court had jurisdiction to review the IJ's determination with regard to exceptional and extremely unusual hardship, Petitioner's due process argument still fails.  Petitioner is correct in asserting that due process requires that the IJ afford an alien a full and fair hearing.  *Huicochea-Gomez v.* INS, 237 F.3d 696, 699 (6th Cir. 2001).  However, the panel in *Alshareqi*, 295 F. App'x at 6, noted that cancellation of removal is discretionary relief and "the failure to be granted discretionary relief does not amount to a deprivation of a liberty interest."  *See also Ashiki v. INS,*

233 F.3d 913, 921 (6th Cir. 2000) ("[The Petitioner] has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation."); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause.")

Here, Petitioner merely reasserts the same arguments that were presented and considered by the IJ, arguing that the cumulative effect of all of this evidence demonstrates hardship. As the cases cited above make clear, cancellation of removal is a discretionary determination, and the IJ, in finding that Lopez failed to demonstrate the factor of exceptional and extremely unusual hardship, did not violate his due process rights. *See Alshareqi*, 295 F. App'x at 6*; Ashiki*, 233 F.3d at 921. Thus, even if the court had jurisdiction to review this issue, Petitioner's request fails on the merits.

### C. Asylum

Lastly, Petitioner argues that the BIA erred in determining that he was not eligible for asylum. An applicant for asylum must demonstrate that he is a refugee, in that he has suffered "actual past persecution or because he has a well-founded fear of future persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (citing 8 C.F.R. § 208.13(a)-(b)). Additionally, this persecution must be "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (citing *INS v. Elias-Zacharias*, 502 U.S. 478, 481 (1992)). In the instant case, as noted by the BIA, Lopez failed to demonstrate that the death of his family was on account of any of the required factors. Petitioner admits that he failed to make this demonstration, but argues that he was too young to know why this persecution occurred. Petitioner, however, bears the burden of demonstrating that he qualifies as a refugee, which includes showing that the persecution was on account of one of the protected grounds. *See Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir.

2007); *Mikhailevitch*, 146 F.3d at 389. Because he admittedly failed to make this demonstration, the BIA correctly concluded that he was not entitled to asylum.

The BIA further noted that Lopez was ineligible for asylum because the civil war in Guatemala had ended, making it unlikely that he would face similar persecution if he returned to this country. Petitioner, in response, argues that he is entitled to a humanitarian grant of asylum under *Matter of Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989). In *Matter of Chen*, the BIA held that the petitioner, who suffered severe persecution during the Chinese Cultural Revolution because of his religious beliefs, was entitled to asylum despite the fact that there was little likelihood of future persecution. *Id.* Even in *Matter of Chen*, however, the petitioner demonstrated a nexus between his past persecution and a protected ground, which Lopez fails to offer here. *See id.* at 18. Thus, even if the persecution that Lopez suffered while in Guatemala was severe enough to warrant a humanitarian grant of asylum, his argument on this ground still fails because he did not demonstrate the required nexus. Accordingly, the court denies Lopez's petition with regard to asylum.

## IV. CONCLUSION

For the foregoing reasons, we **DISMISS** Lopez's petition regarding voluntary departure and cancellation of removal for lack of subject matter jurisdiction and **DENY** the remainder of his petition on the merits.