**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0398n.06

**No. 12-3903**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**KAREN ANDREA MARTIAL-EMANUEL,**

    **Petitioner,**

**v.**

**ERIC H. HOLDER, JR., Attorney General,**

    **Respondent.**

                                 /

                                         **FILED**
                                 *Apr 22, 2013*
                     DEBORAH S. HUNT, Clerk

**ON PETITION FOR REVIEW OF A
FINAL ORDER OF THE BOARD OF
IMMIGRATION APPEALS**

**BEFORE:**    **MERRITT, CLAY, and DONALD, Circuit Judges.**

     **CLAY, Circuit Judge.**  Petitioner Karen Andrea Martial-Emanuel, a native of Guyana and a citizen of Canada, seeks review of the Board of Immigration Appeals' denial of her application for cancellation of removal under § 240A of the Immigration and Nationality Act, 8 U.S.C. § 1229b. The Board adopted an Immigration Judge's determination that Petitioner was ineligible for cancellation of removal because she could not establish that her United States citizen husband and son would suffer "exceptional and extremely unusual hardship" as a result of her removal. Because we find no constitutional or legal errors with the Board's decision, we **DENY** the petition for review.

**BACKGROUND**

Petitioner and her husband, Lennox Emanuel, first met while the two were attending the University of Windsor in Ontario, Canada. He entered the United States unlawfully in the early 1980's but was later naturalized and became a U.S. citizen. In 1984, Petitioner likewise entered the United States without a valid entry document, and she has resided in this country unlawfully since then. Petitioner has been employed nearly continuously since she arrived, working at department stores in New York City, Chicago, and Iowa City, while Emanuel attended law school at the University of Iowa. Petitioner and Emanuel were married in 1991, and the couple had a son in 1994.

In 1999, Petitioner and her family moved to metropolitan Detroit, where Emanuel works as an attorney and Petitioner works as a business consultant for the 7-11 corporation. The family purchased a home in an affluent Detroit suburb, and their son began attending nearby schools. By all accounts, the family's relationship is strong and Petitioner's son is performing well in school. However, Petitioner and her husband have had no shortage of financial difficulties, filing for bankruptcy in 1995. They currently owe more on their mortgage than the property is worth, as well as over $100,000 in back taxes to the IRS. Because of the economic downturn, Emanuel's current income is reputedly "negligible," while Petitioner earns approximately $65,000 per year at 7-11.

In September 2006, Petitioner applied to the Department of Homeland Security ("DHS") for an adjustment of her immigration status based on her marriage to a U.S. citizen spouse. It seems that this application first brought to the government's attention the fact that Petitioner had been living and working in the United States unlawfully. As part of its investigation, DHS discovered that when she first applied for a job with 7-11, Petitioner falsely attested that she was a citizen of the United

States in order to gain employment. The government further discovered that Petitioner had falsely claimed to be a citizen when registering to vote in 2001. Petitioner testified that she believed she was required to register in order to renew her driver's license, but she does not appear to have actually voted in any elections. As a result of these discoveries, DHS denied Petitioner's application for adjustment of status in August 2007.

A few months later, the government initiated removal proceedings against Petitioner, alleging that she was removable from the United States as an alien who falsely represented herself to be a U.S. citizen for a purpose or benefit, under 8 U.S.C. § 1182(a)(6)(C)(ii)(I), and as an alien who was not in possession of a valid entry document at the time of her application for admission, under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Petitioner conceded removability as charged. To avoid removal, Petitioner applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). To establish her eligibility for cancellation of removal, Petitioner was required to establish that her removal would result in "exceptional and extremely unusual hardship" to her U.S. citizen husband or son.

At a hearing before an Immigration Judge ("IJ"), Petitioner and her husband argued that her removal to Canada would cause the family severe financial hardship and disrupt the life of their teenage son. The evidence showed, and the IJ found, that the family would lose their home in suburban Detroit without the benefit of Petitioner's income. Petitioner testified that although she had not looked for work in Canada, she did not believe she could find a job there. Emanuel testified that he would not be able to practice law in Canada, but he was unable to explain why he could not continue to practice law in Detroit while making the short commute from the nearby city of Windsor, Ontario. Although Petitioner testified that she would likely relocate to Toronto if she were removed

3

to Canada, Windsor lies within sight of Detroit, is easily accessible by car, is familiar to Petitioner and Emanuel from before they came to the United States, and is where five of Petitioner's siblings currently reside.

Understandably, much of the testimony focused on the effect that removal would have on Petitioner's son. At the time of the hearing before the IJ in September 2010, Petitioner's son was a junior in high school. He testified that he intended to apply to colleges, including the University of Michigan, Michigan State University, and Georgetown University. Presumably, he has since graduated from high school. Petitioner and Emanuel testified that because of Emanuel's long hours at work, Petitioner provided the vast majority of care for their son and being separated from him would be detrimental. For some reason, both Petitioner and Emanuel assumed that losing their home in the Detroit suburbs would force them to move into the city of Detroit, which they believed would not provide a safe and healthy environment for their son.

On October 25, 2010, the IJ concluded that Petitioner had not established that Emanuel and their son would suffer "exceptional and extremely unusual hardship" if she were removed to Canada. On that basis, the IJ denied her application for cancellation of removal. The IJ reasoned that, unfortunately, the family's financial difficulties were likely to cause them to lose their home whether or not she was removed. The IJ further found that Petitioner would likely settle just across the river from Detroit in Windsor, and Petitioner's son would soon be going off to college.

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On June 25, 2012, the BIA adopted and affirmed the IJ's decision and dismissed Petitioner's appeal. The BIA found that the IJ properly considered the "ages, health, and circumstances" of Petitioner's qualifying

U.S. citizen relatives. The BIA further reasoned that Petitioner's case was distinguishable from other cases in which an exceptional hardship had been found, as when an alien's native country had no employment opportunities, the alien was the sole caregiver of his or her children, the children were not familiar with the language of the country of removal, or there was no family support in the removal country. Having found none of these circumstances present in Petitioner's case, the BIA dismissed her appeal.

## DISCUSSION

Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative decision. *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Cancellation of removal under § 1229b is considered discretionary relief and, as such, is largely insulated from judicial review. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b [cancellation of removal]."); *see also Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011). Although Congress has largely removed from our oversight the government's exercise of discretion in this area, we do have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Accordingly, we can review disputed interpretations of statutory or regulatory language and evaluate whether the BIA properly adhered to the legal standards announced in its own binding precedents. *Ettienne*, 659 F.3d at 517. The BIA's decisions regarding constitutional and legal claims are reviewed *de novo*. *Stserba v. Holder*, 646 F.3d 964, 971 (6th Cir. 2011).

To establish eligibility for cancellation of removal, nonpermanent resident aliens must satisfy four criteria: 1) they must have been physically present in the United States for a continuous period of at least ten years; 2) they must have been a person of good moral character while in the United States; 3) they may not have been convicted of any qualifying criminal offenses; and 4) they must establish that removal "would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States." 8 U.S.C. § 1229b(b)(1). The alien bears the burden of proof with respect to these requirements, and in the case of discretionary relief like cancellation of removal, the alien must also establish that he or she merits a favorable exercise of the Attorney General's discretion. *See* 8 U.S.C. § 1229a(c)(4)(A).

Petitioner argues that by rejecting her contention that her family would suffer exceptional and extremely unusual hardship if she were she removed to Canada, the BIA and the IJ violated the due process and equal protection guarantees of the Fifth Amendment.[1]  Furthermore, Petitioner asserts that the BIA's interpretation of the operative statutory language runs contrary to congressional intent. As discussed below, we reject Petitioner's claims.

A.    **Due Process**

Petitioner argues that the substantive protections afforded by the Due Process Clause prevent the government from separating her from her family. She points to numerous and venerable

----

[1] Petitioner refers to the Fourteenth Amendment as the source of these constitutional protections, but that amendment applies only to the states and their instrumentalities. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). At issue in this case, on the other hand, is the conduct of the federal government, which is circumscribed by the due process and equal protection principles of the Fifth Amendment. *See id.*; *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)). We will construe Petitioner's challenge as brought under the proper constitutional provision.

6

Supreme Court decisions which refer to "the sanctity of the family," *Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1976), and the basic importance of marriage to our society, *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971). We sympathize whenever the enforcement of the immigration laws challenges a family's ability to remain together, and we acknowledge the difficulty of Petitioner's situation. However, Congress has made clear that while promoting family unity is one goal of the immigration system, it is not the only goal. *See Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2019 (2012) (observing that § 1229b(a) renders aliens convicted of certain aggravated felonies ineligible for cancellation of removal, "regardless of the strength of their family ties").

Congress has made the policy decision to exclude aliens like Petitioner from the United States absent extreme hardship to their families, and we may police the government's discretion only for constitutional or legal error. *See Ettienne*, 659 F.3d at 517. This Circuit and others have held on numerous occasions that the removal of aliens does not violate either their constitutional rights or the constitutional rights of their U.S. citizen family members. *See Newton v. INS*, 736 F.2d 336, 343 (6th Cir. 1984) (finding "no constitutional rights of citizenship implicated in the decision to deport" the parents of U.S. citizen children); *see also Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010) (finding "no fundamental right to reside in the United States simply because other members of [an alien's] family are citizens"); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue . . . have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

Petitioner correctly asserts that the Due Process Clause protects against governmental encroachment on certain fundamental rights, among them the freedom to live in the same house with family as one chooses, *Moore*, 431 U.S. at 504–06, the right to make certain decisions related to childbearing and procreation, *e.g.*, *Griswold v. Connecticut*, 381 U.S. 479 (1965), the right of parents to the custody of their children, *Stanley v. Illinois*, 405 U.S. 645 (1972), and the right to decide how to provide for their children's education, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925). However, no court has ever held that the doctrine of substantive due process developed in these cases prevents the government from controlling when and how an alien may remain in the United States. *See Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (observing that Congress' power to regulate the admission of aliens into the United States is "plenary" and "complete").

To the extent that Petitioner challenges the denial of her application for cancellation of removal on the basis of procedural, rather than substantive, due process, her claim fails because an alien does not have a protected liberty or property interest in the grant of discretionary relief like cancellation of removal. *See Patel v. Gonzales*, 470 F.3d 216, 220 (6th Cir. 2006). Because Petitioner has no fundamental right to remain in the United States and no protected interest in discretionary relief, her due process claim fails.

### B. Equal Protection

In the immigration context, our review of equal protection challenges is narrow and highly deferential to the government. *See Bartoszewska-Zajac v. INS*, 237 F.3d 710, 714 (6th Cir. 2001) (citing *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976)). Such a challenge will not succeed as long as the statute at issue "is conceivably related to the achievement of the federal interest." *Id.* Congress'

exercise of its power to establish criteria for the admission and removal of aliens, "if predicated on a rational basis, may distinguish between classes of aliens, and confer benefits on one or more classes that are not available to others." *Newton*, 736 F.2d at 339; *see also Mathews*, 426 U.S. at 78 (rejecting the notion that "all aliens must be placed in a single homogeneous legal classification").

Petitioner argues that the statutory requirement of "exceptional and extremely unusual hardship" necessarily preferences aliens from poor countries and punishes those from wealthy countries, or as she puts it, rewards "sloth and mediocrity" over "economic success." *See* Pet'r's Br. 19. Congress intended for cancellation of removal to provide a safety valve when an otherwise-removable alien has U.S. citizen family members. *See Marin-Garcia v. Holder*, 647 F.3d 666, 673–74 (7th Cir. 2011) (noting that the statute reflects "the legitimate and long-recognized Congressional policy of protecting the integrity of the family unit"). However, to prevent aliens from improperly deriving immigration benefits merely because members of their family are citizens, Congress placed "robust limits" on the availability of cancellation. *See id.* at 674. The statute reflects this "fundamental immigration enforcement polic[y]" and provides eligibility for cancellation of removal only in "truly exceptional cases." *See* H.R. Rep. No. 104-828, at 213–14 (1996).

Given Congress' clearly expressed desire to allow cancellation of removal only in the most extreme cases, we find it perfectly rational for the government to take into account the relative economic prosperity of an alien's country of removal. Congress plainly did not intend cancellation of removal to operate as a reward for what Petitioner calls the "successful and industrious," nor does the Constitution require the government to turn a blind eye to the obvious and relevant differences

between aliens who would face dire financial need upon removal and those who would not. Indeed, it would seem irrational, given Congress' instruction that cancellation of removal be reserved only for the "truly exceptional cases," for the government to refuse to take economic circumstances and financial need into account. Accordingly, we find that the policy of considering the economic conditions in an alien's country of removal is rationally related to the government's legitimate interest in enforcing the immigration laws while making exceptions only for those who will suffer extreme hardship. *See Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (noting that a contrary decision would create "a substantial loophole in the immigration laws"). Because the policy and the government's interest are rationally related, Petitioner's equal protection claim fails.

## C.     Statutory Interpretation

In an argument similar to her equal protection challenge, Petitioner asserts that the BIA's interpretation of the statutory phrase "exceptional and extremely unusual hardship" is contrary to what Congress intended because it "disqualif[ies] almost everyone except deportees to the most economically ravished and politically tumultuous Third World countries." *See* Pet'r's Br. 22. When reviewing the BIA's interpretation of ambiguous terms in the Immigration and Nationality Act, we apply *Chevron* deference, and "we will uphold the BIA's construction unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)).

Contrary to Petitioner's suggestion, the BIA considers numerous factors when evaluating whether an alien has established that their U.S. citizen family members will suffer "exceptional and

extremely unusual hardship" as a result of their removal. The BIA considers "the ages, health, and circumstances" of the qualifying family members, including the need for the alien to care for older relatives in the United States or a child's need to remain in this country for special medical or educational attention. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001). The BIA also considers the "political and economic conditions" in the country of removal, but these factors are not by themselves sufficient to constitute an exceptional hardship, even as Petitioner asserts that aliens from wealthy countries are "automatically disqualified from seeking relief." *See* Pet'r's Br. 23. That is simply not so. In any event, for substantially the reasons described above, the BIA's consideration of economic circumstances and financial need is not unreasonable, nor is it "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

Petitioner raises no meritorious constitutional or legal challenges to the BIA's denial of her application for cancellation of removal. Accordingly, her petition for review must be denied.

## CONCLUSION

For the foregoing reasons, the petition for review is **DENIED**.