NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0221n.06

No. 14-3666

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 19, 2015
DEBORAH S. HUNT, Clerk

JAIME ESQUIVEL MORA,                              )
                                                  )
        Petitioner,                               )
                                                  )     ON PETITION FOR REVIEW
v.                                                )     FROM THE UNITED STATES
                                                  )     BOARD OF IMMIGRATION
ERIC H. HOLDER, JR., Attorney General,            )     APPEALS
                                                  )
        Respondent.                               )
                                                  )
                                                  )

BEFORE: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.*

PER CURIAM. Jaime Esquivel Mora (Esquivel) petitions this court for review of an

order of the Board of Immigration Appeals (BIA) dismissing his appeal from the denial of his

application for cancellation of removal. We deny the petition for review.

Esquivel, a native and citizen of Mexico, entered the United States in 1990 with a

temporary agricultural worker's visa, which he overstayed. In 2009, the Department of

Homeland Security apprehended Esquivel and served him with a notice to appear in removal

proceedings, charging him with remaining in the United States for a time longer than permitted

by his visa. *See* 8 U.S.C. § 1227(a)(1)(B). Esquivel appeared before an immigration judge (IJ)

and conceded removability. Esquivel applied for cancellation of removal on the basis that his

removal to Mexico would result in exceptional and extremely unusual hardship to his United

---

*The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District
of Ohio, sitting by designation.

States citizen children. *See* 8 U.S.C. § 1229b(b)(1). Esquivel also sought voluntary departure. *See* 8 U.S.C. § 1229c(b)(1).

After hearing testimony from several witnesses, the IJ denied Esquivel's applications for cancellation of removal and voluntary departure. The IJ found that Esquivel's untruthful testimony about having no contact with his parents in Mexico and his siblings in the United States was material and precluded him from establishing good moral character. The IJ also determined that Esquivel had failed to establish the requisite degree of hardship to his United States citizen children. The IJ went on to conclude that, even if Esquivel had demonstrated the statutory prerequisites for cancellation of removal, his application would be denied as a matter of discretion based on his untruthful testimony. Finally, the IJ denied Esquivel's request for voluntary departure for failing to establish good moral character and also as a matter of discretion.

Esquivel appealed the IJ's decision to the BIA. Dismissing his appeal from the denial of cancellation of removal, the BIA agreed with the IJ that Esquivel had "not established that his children will suffer hardship substantially beyond that which ordinarily would be expected to result from a family member's removal from the United States." (AR 3). On de novo review, however, the BIA found that Esquivel had established good moral character and that he was statutorily eligible for voluntary departure. The BIA further held that Esquivel merited voluntary departure as a matter of discretion.

This timely petition for review followed. Where, as here, the BIA issues a separate decision rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent that the BIA adopts the IJ's reasoning, we also review the IJ's decision. *Id*. We generally lack

jurisdiction to review the discretionary denial of an application for cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i). We retain jurisdiction, however, to review "constitutional claims or questions of law" as well as non-discretionary decisions. 8 U.S.C. § 1252(a)(2)(D); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008).

Esquivel contends that he was denied a fair and objective hearing on his application for cancellation of removal because the IJ's erroneous credibility determination adversely affected the IJ's analysis and evaluation of the hardship evidence. To establish a due-process violation, Esquivel must show that there was a defect in the removal proceedings and that he was prejudiced by that defect. *See Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012). In its decision—the final agency determination—the BIA found that the inconsistencies in Esquivel's testimony were not willful or material and were not made to obtain an immigration benefit and concluded that he had established good moral character. In holding that Esquivel had failed to establish the requisite degree of hardship to his United States citizen children, the BIA did not mention the inconsistencies in his testimony or otherwise address his credibility. Esquivel has failed to demonstrate that the IJ's statements about his untruthful testimony "led to a substantially different outcome" with respect to the BIA's hardship determination. *Id*. In any event, Esquivel has no protected interest in discretionary relief such as cancellation of removal. *See Martial-Emanuel v. Holder*, 523 F. App'x 345, 350 (6th Cir. 2013). We lack jurisdiction to consider Esquivel's argument that he demonstrated exceptional and extremely unusual hardship to his United States citizen children, which is merely a challenge to the agency's discretionary determination. *See Ettienne v. Holder*, 659 F.3d 513, 518-19 (6th Cir. 2011); *Lopez Gonon v. Holder*, 341 F. App'x 88, 92 (6th Cir. 2009).

Esquivel next asserts that the BIA and the IJ applied the incorrect legal standard by focusing on the present circumstances of his United States citizen children rather than on the future hardships that they would face if he were removed and they accompanied him to Mexico. The BIA and the IJ did not believe, as Esquivel contends, that his children would remain in the United States if he were removed to Mexico. The BIA and the IJ explicitly considered the future hardships that Esquivel's children would face if they accompanied him to Mexico. The administrative decisions belie Esquivel's arguments.

For the foregoing reasons, we deny Esquivel's petition for review.

KETHLEDGE, Circuit Judge, joined by HELMICK, District Judge, concurring. If Jaime Esquivel Mora were a citizen, we would call him a model one. Esquivel grew up in poverty in Mexico, living with 11 other family members in a one-bedroom home, which he left at age 14 after a particularly severe beating by his father. He entered the United States legally in 1990 but overstayed his visa and has remained here since. For 16 years he worked for the same construction company, starting as a laborer and working up to the position of foreman. But on September 3, 2009, while working on a job near the Ambassador Bridge (which connects Detroit, Michigan and Windsor, Ontario), Esquivel made a wrong turn and found himself in line for Canadian customs. The eventual result was these proceedings.

The issue before the immigration judge was whether to grant Esquivel a waiver of removal on hardship grounds. On those grounds Esquivel presents a strong case. The record shows that Esquivel has been married to his wife, Maria, for more than 17 years. They have three U.S.-citizen children. Esquivel has attended the same church for more than 20 years—his family attends services with him each week—and Esquivel frequently volunteers his time there. Esquivel also has a long history of volunteer work at the church's senior center (he learned to speak English there), which is where he met Maria. Esquivel works six days a week, typically leaving the house each day around 5:30 a.m. and returning home as late as 9 or 10 p.m. He has paid taxes every year since 1992. He purchased his home in 2007 and has made his mortgage payments ever since. He does not drink, smoke, or gamble and has never been arrested or charged with a crime. Esquivel's petition for cancellation of removal brought forth an outpouring of support from people who know him in Lansing: a former mayor of Lansing, who has known Esquivel for more than 20 years, wrote that "Jaime is a trusted and respected member of this community" and that "he sets a good example for other citizens." The Treasurer of the

Lansing Board of Education wrote about Esquivel's volunteer work at his church and his children's schools. An assistant professor at Michigan State University wrote that Esquivel "is the kind of person that respects and helps others." Another citizen wrote that Esquivel "has been a blessing to different people in the community." His pastor wrote that Esquivel's removal "would be a great loss for our community" and "a terrible hardship for him and his family[.]" A retired captain of the Lansing Fire Department wrote that "anybody would be glad to have this man as a neighbor"; and another citizen wrote that Esquivel "and his family ha[ve] been a beautiful example to all of us who have been born in this country." The record also leaves no doubt that Esquivel is a good and caring father; indeed, by all appearances, his life's work has been to make his children's lives better than his own.

But Esquivel's children indisputably face severe hardship if he is removed to Mexico. The record makes clear that his family will go with him: Esquivel's wife cannot pay the mortgage on their home or otherwise support the family; the family is very close; and when Esquivel's oldest son was asked during the hearing why he would "give up your school, friends, everything" to move with his family to Mexico, the son replied: "I only have one dad." But none of Esquivel's three children speak Spanish—they have lived in Lansing all their lives—and none of them have ever been to Mexico. The children (along with their parents) will also lose their health insurance (now provided by Esquivel's employer) if they move there. Esquivel himself has not been to Mexico in a quarter-century and has no property or job prospects there. And Maria has not been to Mexico since she came to this country at age six.

One might wonder, then, why the immigration judge denied Esquivel's petition for a hardship waiver. The IJ's oral decision leaves no doubt as to the reason why; and that reason had nothing to do with hardship. During the hearing before the IJ, Esquivel testified (falsely, as

he later admitted in the hearing) that he had not been in contact with any of his siblings, when in fact he has been in contact with four of them—because they too are present in this country illegally. The IJ's reaction, to put it bluntly, was anger: the IJ went on for more than 12 pages in his oral decision about Esquivel's "lies" and "prevarications"—characterizations that, in some instances, are truly tendentious—and found, as a result of them, that Esquivel was a person of bad character. The IJ concluded: "If [Esquivel] had just told the truth at the beginning, obviously he might have a sympathetic case, one where the Court might want to grant some discretionary relief." But Esquivel had not told the truth about his contact with his siblings— obviously to protect them—and therefore the IJ ordered Esquivel removed.

This court of course cannot condone false testimony. What the IJ never recognized, however, was that—unlike virtually every petitioner who testifies falsely, and there are surely many of them—Esquivel did not do so to obtain a benefit for himself. Quite the contrary: Esquivel did so at great risk to himself, a risk that fully materialized in the IJ's decision in this case. The Board, for its part, at least corrected the IJ's finding about Esquivel's character, but left the removal order in place.

As our opinion today acknowledges, this court lacks jurisdiction to review the Attorney General's decision to deny the discretionary relief that Esquivel seeks. But this case remains a deeply troubling one. The record leaves the distinct impression that, but for a combination of circumstances having nothing to do with hardship, the IJ might well have granted discretionary relief on grounds of hardship. The decision here, as it now stands, would throw away the benefits that this family so plainly provides to their community, and in doing so damage very seriously the prospects of three American children—who, by all indications, are already on their way to becoming model citizens of their own.

But that decision need not stand. As an initial matter, Esquivel's case would appear to satisfy the "guiding principles" for a form of relief that the government calls "deferred action." *See Mason v. Mukasey*, 306 Fed. App'x 897, 902 (6th Cir. 2009). Moreover, "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. §1003.2(a). "Whether to do so, of course, is up to the Board; and for good reasons, it exercises that authority sparingly." *Ba v. Holder*, 358 F. App'x 609, 616 (6th Cir. 2009) (internal quotation marks omitted). To the Board's lasting credit, however, it sometimes does exercise that authority.

I respectfully urge the Board to exercise that authority here.