[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12332
Non-Argument Calendar
_____

Agency No. A205-962-674

MUKHTAR CHOCHAEV,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 10, 2020)

Before WILLIAM PRYOR, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

# I

Mukhtar Chochaev seeks review of the Board of Immigration Appeals's (BIA) denial of his motion to reconsider its dismissal of his appeal of an Immigration Judge's (IJ) denial of his motion to reopen his removal proceedings. Chochaev previously petitioned for review of the BIA's order affirming the denial of his motion to reopen his removal order; a panel of this Court dismissed that petition in part and denied it in part. *See Chochaev v. U.S. Att'y Gen.*, 783 F. App'x 967, 968 (11th Cir. 2019).

Chochaev's present petition raises four arguments. First, he asserts that the BIA erred by rejecting his argument that his serious illness and his prior attorneys' ineffective assistance amounted to exceptional circumstances that excused his failure to appear at his removal hearing, rendering his *in absentia* order of removal inappropriate. Second, he contends that the BIA erred by ignoring *In re Velarde-Pacheco*, 23 I. & N. Dec. 253 (B.I.A. 2002), *overruled on  other grounds by Matter of Avetisyan*, 25 I. & N. Dec. 688 (B.I.A. 2012), in its decision declining to reopen his proceedings based on his marriage to a lawful permanent resident (LPR) and his pending visa petition. Third, he argues that the BIA erred in declining to exercise its *sua sponte* authority to reopen his case. Finally, Chochaev

2

maintains that the IJ lacked subject matter jurisdiction over his proceedings in light of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because his notice to appear (NTA) did not specify the time and location of his removal hearing.[1]

We conclude that the law-of-the-case doctrine forecloses Chochaev's first, third, and fourth arguments because they were raised in rejected in connection with his earlier petition. With respect to his second argument—that the BIA abused its discretion by refusing to reopen his proceedings based on his marriage and his pending visa petition—we conclude that the BIA did not abuse its discretion. Accordingly, we affirm.

## II

### A

The facts of this case are familiar to the parties, so we will proceed directly to the merits of Chochaev's claims. "We review the BIA's denial of a motion to reopen and its denial of a motion to reconsider for abuse of discretion." *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). "[R]eview is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Ali v. U.S. Att'y*

---

[1] In *Pereira*, the Supreme Court held that "[a] notice [to appear] that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)." 138 S. Ct. at 2110 (internal quotation marks omitted). But this Court has subsequently held that a "deficient NTA [under *Pereira*] d[oes] not deprive the agency of jurisdiction over . . . removal proceedings." *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019).

*Gen.*, 443 F.3d 804, 808 (11th Cir. 2006) (quoting *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005)).

An alien may move the BIA to reconsider "any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a); 8 U.S.C. § 1229a(c)(6)(A). The alien's "motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior [BIA] decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). "[M]erely reiterating arguments previously presented to the BIA does not constitute 'specifying . . . errors of fact or law' as required for a successful motion to reconsider." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007) (alteration in original) (quoting 8 C.F.R. § 1003.2(b)(1)).

## B

Under the law-of-the-case doctrine, an appellate court's factual findings and legal conclusions "are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1405 (11th Cir. 2009) (internal quotation marks and citation omitted). The doctrine does not apply "if, since the prior decision, new and substantially different evidence is produced, or there has been a change in controlling authority." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000). Neither of these exceptions applies to this appeal.

4

Here, the law-of-the-case doctrine forecloses the arguments that Chochaev raises in his petition regarding (1) the alleged insufficiency of his NTA under *Pereria*, (2) the alleged exceptional circumstances warranting the reopening of his removal proceedings, and (3) the BIA's refusal to exercise *sua sponte* authority to reopen his case.

## 1

In our prior opinion, this Court held that "Chochaev failed to exhaust" his *Pereira*-based claim that his NTA was insufficient—because he did not raise it in any of his immigration proceedings, we held that "we . . . lack[ed] jurisdiction to consider it." *Chochaev*, 783 F. App'x at 968–69. And, even if he had exhausted, we held that his *Pereira* claim would still fail on the merits, because "a notice to appear that does not specify the time and place of an alien's initial hearing *is* a charging document that vests the IJ with jurisdiction provided (as happened here) that it is followed by a notice of hearing that supplies the missing scheduling information." *Id.* at 969 (emphasis in original). These holdings are "binding in [these] subsequent proceedings in the same case . . . ." *Mega Life*, 585 F.3d at 1405.

## 2

With respect to Chochaev's exceptional-circumstances claim, we held in our earlier opinion that the evidence that he provided to document the serious illness

that allegedly prevented his attendance at the hearing was "insufficient," so "the BIA and IJ did not err in finding that Chochaev's illness was not an exceptional circumstance." *Id.* at 970.[2]  Additionally, this Court held that "[n]one of the actions or omissions by Chochaev's lawyers had a direct bearing on his attendance of the hearing or prevented him from contacting the IJ himself to inform her of his illness." *Id.* at 971.  Indeed, "[b]oth of his prior attorneys advised him to attend his hearing, and Chochaev indicated he understood that he was required to attend the hearing." *Id.*  On top of that, "Chochaev represented in multiple filings that he would have attended the hearing but for his illness; he made no claims about his attorneys' actions preventing his attendance." *Id.*  This Court held, therefore, that "[i]t was not an abuse of discretion for the BIA to deny Chochaev's motion to reopen" on these grounds. *Id.*  Again, that holding controls in this subsequent stage of the same proceeding.

## 3

Lastly, this Court held that it "lack[ed] jurisdiction to review Chochaev's argument regarding the BIA's *sua sponte* authority to reopen his case, a[s] he ha[d] not raised any specific constitutional claims relating to the denial of *sua sponte*

---

[2] As we noted in our prior opinion, "Chochaev provided only a photocopy of the bill and a doctor's note—which stated in its entirety, 'was examined on 7/28/2017 may refuse to work 7/30/2017'—and affidavits from himself and his wife as evidence that he suffered from a serious illness and could not travel to his hearing." *Chochaev*, 783 F. App'x at 970.

reopening." *Id.* at 972.  This Court, therefore, "dismiss[ed] Chochaev's petition as to this issue." *Id.*  Because Chochaev still has not presented any specific constitutional claims, we continue to lack jurisdiction to review his contention.

* * *

So, in short, the law-of-the-case doctrine forecloses Chochaev's arguments concerning all three of these issues.  We turn, then, to his remaining argument, pertaining to the BIA's decision not to reopen his proceedings based on his marriage to an LPR and his pending visa petition.

## III

The INA gives the Attorney General the discretion to adjust the status of an alien to that of an LPR if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  8 U.S.C. § 1255(a).  When an alien marries a U.S. citizen, the citizen-spouse may file an I-130 petition, which, if approved, "provides the evidentiary basis for the beneficiary's adjustment of status via Form I–485, Application to Register Permanent Residence or Adjust Status." *Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1194 n.6 (11th Cir. 2008).  LPRs may also file such petitions on behalf of their alien spouses.  8 U.S.C. §§ 1153(a)(2), 1154(a)(1)(A)(i), (B)(i)(I).

For spouses of U.S. citizens, the number of visas issued each year is not capped, so visas are automatically available to citizens' spouses once their paperwork is approved. *Id.* § 1151(b)(2)(A)(i). The number of visas available to spouses of LPRs, however, is limited by statute—as a result, visas will not necessarily be automatically available to LPRs' spouses when their paperwork is approved. *Id.* § 1153(a)(2), (e)(1), (3); *see, e.g.*, *Dinanto v. U.S. Att'y Gen.*, 410 F. App'x 204, 206–07 (11th Cir. 2010). Rather, their visas are "issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General," and applicants may be put on a waiting list "maintained in accordance with regulations prescribed by the Secretary of State" until visas become available. 8 U.S.C. § 1153(a)(2), (e)(1), (3).

Generally, an alien may not have his status adjusted under § 1255(a) while he is seeking an immigrant visa on the basis of a marriage that was entered into while removal proceedings are pending—as is the case here. 8 U.S.C. § 1255(e)(1)–(2). However, pursuant to the "bona fide marriage exception," this bar to adjustment of status—

> shall not apply with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant . . . .

*Id.* § 1255(e)(3).

8

In *In re Velarde-Pacheco*, the BIA granted an alien's motion to reopen where the alien married a U.S. citizen after he had been ordered removed from the country.  23 I. & N. Dec. at 254.  The alien and his spouse filed an I-130 petition and an I-485 application to adjust his status after entry of the order of removal.  *Id.* In his motion to reopen, the alien argued that he should be given the opportunity to adjust his status to that of an LPR as a result of his marriage, and as evidence of the bona fide nature of his marriage he attached his marriage certificate, copies of filing fee receipts for the I-130 and I-485 forms, his U.S. citizen son's birth certificate, and an affidavit attesting that he had known his wife for at least two years before he was ordered removed.  *Id.* at 254, 256.

The BIA determined that, under those circumstances, a motion to reopen may be granted as a matter of discretion where: "(1) the motion is timely filed; (2) the motion is not numerically barred . . . (3) the motion is not barred . . . on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5)" the motion is unopposed.  *Id.* at 256.  The BIA emphasized that it was "not endors[ing] granting adjustment of status in every case in which a respondent makes a prima facie showing of eligibility" and that its decision did "not require Immigration Judges to reopen proceedings pending adjudication of an I-130 visa

petition in every case in which the respondent meets all five of the aforementioned factors." *Id.* at 256–57.[3]

Here, the BIA did not abuse its discretion in denying Chochaev's motion based on his present ineligibility for adjustment of status. First and foremost, *Velarde-Pacheco* gives the BIA the *discretion* to grant motions to reopen when its five factors are met—it doesn't *mandate* anything. *See id.* at 256. Moreover, in his motion for reconsideration, Chochaev didn't assert that a visa would be immediately available to him once his petition was approved. Indeed, Chochaev admitted in his motion that his "spouse [wa]s in the process of becoming a US Citizen" and that he "w[ould] be able to adjust his status to that of a Lawful Permanent Resident once [his] I-130 [wa]s approved and once his spouse [wa]s naturalized."

Because Chochaev's wife was not yet a U.S. citizen at the time,[4] his case is fundamentally different from *Velarde-Pacheco*, where the petitioner's spouse was a U.S. citizen. Chochaev—as the spouse of an LPR—would not necessarily have

---

[3] The government argues that because "*Velarde-Pacheco* applies to only timely-filed motions to reopen for adjustment of status, and Chochaev's was untimely," its rationale shouldn't apply to him. Appellee's Br. at 21. We needn't address that contention. The BIA does not appear to have addressed the timeliness of Chochaev's petition in its decision. Moreover, even if we were to treat the petition as timely filed, the reasoning of *Velarde-Pacheco* still wouldn't support Chochaev's argument, for the reasons explained below.

[4] It's worth noting that the BIA appears to mistakenly assert that Chochaev's spouse was already a U.S. citizen in its order. But, Chochaev's application and brief clearly indicate that his spouse was still an LPR at the time.

10

had a visa automatically available to him once his petition was approved, as he would be subject to the statutory caps in place for spouses of LPRs, and he could have to wait in line behind other family-sponsored immigrants of a higher preference level and/or application date. *See* 8 U.S.C. § 1153(a)(2), (e)(1), (3). Chochaev has presented no evidence that, despite these statutory barriers, he would have been able to get a visa immediately once his petition was approved. Thus, the BIA was well within its discretion to deny Chochaev's petition. *See* 8 U.S.C. § 1255(a).

**PETITION DENIED.**